1 F.3d 1241
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles A. KLINE, Plaintiff-Appellant,
v.
TENNESSEE VALLEY AUTHORITY, Marvin Runyon, John B. Waters,
and William H. Kennoy, Defendants-Appellees.
 No. 92-5919.
 United States Court of Appeals, Sixth Circuit.
 July 29, 1993.
 
 Before JONES and NELSON, Circuit Judges, and FRIEDMAN, District Judge.[1]
 PER CURIAM.
 
 
 1
 This is an employment discrimination case that comes to us on appeal from a summary judgment in favor of the Tennessee Valley Authority. The plaintiff, a 52-year-old black man, applied to TVA for a job that was given instead to a 38-year-old white woman. TVA subsequently reevaluated the qualifications of the two applicants, but allowed the woman to retain the job. Contending that the woman was in fact less well qualified than he, the plaintiff asks us to determine whether the district court erred in concluding that there was no genuine issues as to any material fact. We believe that the record does disclose the existence of such an issue, and we shall therefore vacate the judgment and remand the case to the district court.
 
 
 2
 * The plaintiff, Charles A. Kline, was employed by TVA in 1964 as a machinist apprentice. He worked as a machinist until May of 1977, at which time he became a personnel officer at TVA's Watts Bar nuclear plant. He remained in that position until September 30, 1988, when his employment was terminated pursuant to a reduction in force.
 
 
 3
 After his job had been targeted for elimination, Mr. Kline learned that a personnel position was open at the Kingston fossil fuel plant. He contacted Keith Leamon, Human Resource Manager for Power Production, to inquire about applying for the Kingston job. The following day, acting on Mr. Leamon's advice, Mr. Kline hand-delivered a resume to Kingston's plant manager, Ford Clayton. It subsequently developed that Mr. Leamon had already prepared a list of candidates for the position, and Mr. Kline was not on the list.
 
 
 4
 Plant Manager Clayton told his secretary to take the plaintiff's resume to Johnnie Brown, the supervisor of the plant's services department, and ask Mr. Brown to "do something with this." What Mr. Brown did was to place the resume in a desk drawer. There it stayed until long after the job had been filled. Mr. Brown helped interview three finalists, but Mr. Kline was simply not considered for the position.
 
 
 5
 Randy Cole, who had been designated to succeed Mr. Clayton as plant manager, made the final selection. Mr. Cole received the list of candidates from Mr. Leamon and interviewed the finalists with Mr. Brown's help. Mr. Cole's top choice, Pete Johnson, was offered the job on August 15, 1988; he turned it down. Mr. Cole's second choice was Carol Beckler, who accepted. Mr. Cole testified at his deposition that he did not know Mr. Kline was interested in the job.
 
 
 6
 Mr. Kline filed a formal complaint with TVA's Equal Employment Office on October 31, 1988. On December 31, 1990, the Equal Employment Office issued a decision in which it found that the plaintiff had been discriminated against "on the basis of age (52) and race (Black) when he was not considered for a Personnel Officer, M-3, position at Kingston Steam Plant...." A TVA vice president was ordered to reconstruct the selection criteria for the position, review the qualifications of both Ms. Beckler and Mr. Kline, and determine who had better qualified for the job in 1988. Mr. Kline was to be given the job and awarded backpay if it turned out that his qualifications had been superior.
 
 
 7
 Not satisfied with this procedure, Mr. Kline filed the present action in federal district court in February of 1991. TVA went ahead with the "reselection" anyway, and issued a corrective action memorandum concluding that Ms. Beckler was better qualified than Mr. Kline. Both sides subsequently moved for summary judgment.
 
 
 8
 In an opinion and order issued on January 28, 1992, the district court granted partial summary judgment to the defendants. Because Mr. Cole's testimony that he had been unaware of Mr. Kline's interest in the job stood uncontradicted, the court concluded that summary judgment was appropriate "with respect to plaintiff's claim that he was discriminated against in connection with Cole's 1988 decision to hire Beckler." The court went on to note that "[w]ith respect to TVA's [Equal Employment Office] finding that plaintiff was discriminated against on the basis of his age and race when he was not considered for the position at the Kingston Plant, the court concludes that the relief granted by TVA was proper and adequate." Finally, the court allowed the plaintiff leave to amend his complaint to allege that the reselection process had been discriminatory.
 
 
 9
 Mr. Kline then filed an amended complaint alleging race and age discrimination in the reselection. The district court ultimately granted summary judgment in favor of the defendants on this claim as well. Although the plaintiff had made out a prima facie case of both race and age discrimination, the court decided, he "failed to offer any material proof that defendant's stated reason for his nonselection was a mere pretext for unlawful discrimination." This appeal followed.
 
 II
 
 10
 Title VII of the Civil Rights Act of 1964 provides in pertinent part as follows:
 
 
 11
 "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. Sec. 2000e-2(a).
 
 
 12
 Using a nearly identical formula, the Age Discrimination in Employment Act prohibits discrimination because of an individual's age. 29 U.S.C. Sec. 623(a)(1).
 
 
 13
 Both age and race discrimination claims are evaluated under similar approaches. The plaintiff bears the initial burden of establishing a prima facie case of discrimination. A presumption of discrimination arises if the plaintiff establishes such a case, and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. The presumption disappears if the defendant articulates such a reason, and the plaintiff then must show that the articulated reason is merely a pretext for unlawful discrimination.
 
 
 14
 The elements of a prima facie case are similar in both contexts. Where the plaintiff alleges that the defendant failed to select him because of his age or race, the plaintiff may make out a prima facie case by showing that he was a member of a protected class, that he was not selected for the position, that he was qualified for the position, and that a person outside the class of protected persons was selected in his stead. Mitchell v. Toledo Hospital, 964 F.2d 577, 582 (6th Cir.1992). Black people are protected under Title VII, and persons who are at least 40 years of age are protected under the Age Discrimination in Employment Act. 29 U.S.C. Sec. 631(a). The plaintiff may also establish a prima facie case by presenting "credible, direct evidence of discriminatory intent," Mitchell, 964 F.2d at 582, n. 4, but no such evidence was presented here.
 
 
 15
 Plaintiff Kline was a member of the class protected by the Age Discrimination in Employment Act, and the successful candidate, Carol Beckler, was not. Both Mr. Kline and Ms. Beckler were members of classes protected by Title VII, and both, it appears, were at least minimally qualified for the Kingston job. The district court concluded that Mr. Kline had made out a prima facie case of both race and age discrimination; for purposes of this appeal we shall assume the correctness of that conclusion without deciding the question.
 
 
 16
 The explanation tendered by TVA for the initial selection of Ms. Beckler instead of Mr. Kline was that the selecting official, Mr. Cole, did not know that Mr. Kline was a candidate for the job. Mr. Kline argues that there is a question of fact as to the validity of this explanation, given that various TVA managers other than Mr. Cole knew of Mr. Kline's interest. In light of the events that followed, we see no reason to decide the issue.
 
 
 17
 The district court did not take issue with the EEO's determination that Mr. Kline had been discriminated against in the original selection process by reason of TVA's failure even to consider him for the vacant position. The EEO concluded that the appropriate remedy would be to insure that Mr. Kline received consideration in a reselection process, and the district court saw nothing wrong in this. Neither do we. Both the Age Discrimination in Employment Act and Title VII grant broad discretionary power to fashion legal and equitable remedies. 29 U.S.C. Sec. 626(b); 42 U.S.C. Sec. 2000-5(g). See also Albemarle Paper Co. v. Moody, 422 U.S. 405, 425-26 (1975) (reviewing Title VII remedy to determine whether district court "abused its traditional discretion to locate a just result"). The plaintiff has not argued on appeal that this remedy represented an abuse of discretion as far as the "failure to consider" portion of his claim was concerned. The outcome of the reselection process, however, may be more problematic.
 
 
 18
 Before turning to the substantive issue raised by the rejection of Mr. Kline in the reselection process, we note that there was some dispute in the district court, continued in the parties' appellate briefs, as to whether Mr. Kline was barred from contesting the outcome of the reselection because he had not challenged it in a timely administrative complaint or civil action. See 29 U.S.C. Sec. 633a(d) (Age Discrimination in Employment Act) (for federal employee, notice of intent to sue must be filed within 180 days of alleged unlawful practice); 42 U.S.C. Sec. 2000e-16 (Title VII) (federal employee must file civil action within 30 days of EEOC or employing agency final decision).
 
 
 19
 Mr. Kline was not barred from challenging the results of the reselection process. He brought his lawsuit in the first place because, among other things, he was not satisfied with the EEO's proposed remedy for TVA's discriminatory failure to consider him for the Kingston job. Once the suit was filed in district court, TVA was under no obligation to complete the reselection process. TVA decided to go through with the reselection anyway, but the outcome of the reselection had no direct bearing on Mr. Kline's lawsuit until the district court placed its imprimatur on the reselection remedy in its order of January 28, 1992. Mr. Kline promptly amended his pleadings to complain of a discriminatory result, and this was all that was necessary to enable him to contest the result.
 
 
 20
 TVA's articulated rationale for its reselection decision is that Ms. Beckler was better qualified for the Kingston job than was Mr. Kline. Sharon Tousek, a human relations specialist with TVA's Division of Fossil and Hydro Power, worked with Mr. Cole in evaluating the candidates' qualifications. Ms. Tousek reviewed the requirements for the Kingston position and then reviewed both Mr. Kline's resume and personal history record and Ms. Beckler's personal history record. Ms. Tousek believed that TVA's Management Appraisal System (MAS) reviews would be the best way to measure the candidates' experience and management skills. Ms. Tousek did not conduct interviews because she felt that an interview would unfairly benefit Ms. Beckler, who had served in the job for two years by the time the reselection was carried out. Mr. Cole and Ms. Tousek together decided that Ms. Beckler was better qualified for the position.
 
 
 21
 Ms. Tousek prepared a corrective action memorandum that gave the following description of the duties associated with the Kingston position:
 
 
 22
 "Planning, organizing, and implementing all Human Resource Management Activities in support of the TVA Fossil Plant to which assigned. The incumbent is responsible for the application of TVA personnel policies; procedures; union/management agreements; and achievement of objectives in the areas of recruitment, employment, classification, salary and benefits administration, labor relations, AE/EEO, and training administration. The incumbent provides advice and guidance to plant management to ensure adherence to policy and procedures."
 
 
 23
 Ms. Tousek testified that she "secured the job description that was used for the selection from the [EEO] investigative record," and her corrective action report refers to an "attached" copy of the position description. The record, however, does not contain this copy. Mr. Cole likewise testified that he and Ms. Tousek used the draft job description from the original selection in carrying out the reselection. Curiously, the original EEO decision says--twice--that Mr. Cole stated during the EEO investigation that the draft job description had been destroyed sometime around July of 1989.
 
 
 24
 Ms. Tousek compared the MAS reports for both candidates with respect to the following categories: recruitment and employment, salary policy and trades and labor classification systems, salary policy and trades and labor salary administration, labor relations, affirmative employment, and training. (The last category apparently relates to the training of others, not the training of the applicant.) Based on Ms. Tousek's review, Ms. Beckler appeared better qualified in three areas, Mr. Kline appeared better qualified in two, and neither candidate had qualifications in one. The corrective action report also addressed the candidates' management skills. Ms. Beckler's ratings were higher than or equal to Mr. Kline's ratings with respect to each skill over the three years evaluated. The report concluded that although neither candidate fully met the qualifications for the Kingston position, Ms. Beckler's diverse experience and consistently superior performance made her better qualified.
 
 
 25
 The corrective action report and the deposition testimony of Mr. Cole and Ms. Tousek were sufficient to eliminate the presumption of discrimination, but we do not believe they were sufficient to entitle the defendants to judgment as a matter of law. On the record before us we think a jury could disbelieve the stated reasons for preferring Ms. Beckler over Mr. Kline--and the Supreme Court has recently told us that "[t]he factfinder's disbelief of the reasons put forth by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." Saint Mary's Honor Center v. Hicks, 1993 WL 220265 (U.S.), (No. 92-602, June 25, 1993).
 
 
 26
 The corrective action report failed to consider the importance of several factors that distinguished the two candidates. Mr. Kline was a college graduate at the time of the original selection, and Ms. Beckler was not; the report does not discuss the plaintiff's educational advantage. Mr. Kline had acted in a management capacity for TVA for eleven years, while Ms. Beckler had served in such a capacity for only five years. The report is silent about Mr. Kline's greater experience as a manager, and is silent about his hands-on experience as a machinist. Although TVA's decision not to conduct interviews was assertedly motivated by a desire not to favor Ms. Beckler unduly because of her experience in the job, the defendants might well have given Mr. Kline some opportunity to demonstrate experience that his MAS reports did not document. For example, the corrective action report said that Mr. Kline had no experience in salary policy and trades and labor classification systems. Mr. Kline's affidavit reveals that he did have at least some experience in such tasks. The corrective action report noted that Mr. Cole learned during Ms. Beckler's initial interview that she had some exposure to selecting employees, which demonstrates that MAS reports are not definitive statements of a TVA employee's experience and abilities. Against this background we conclude that the question whether TVA in fact made a good faith determination that Ms. Beckler was better qualified for the job is a question that ought not to have been decided in summary judgment proceedings.
 
 
 27
 The district court's final judgment is VACATED, and the case is REMANDED for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 The Honorable Bernard A. Friedman, United States District Judge for the Eastern District of Michigan, sitting by designation