Charles A. **KLINE**, Plaintiff–Appellant,

v.

**TENNESSEE VALLEY AUTHORITY**, Craven Crowell, Johnny H. Hayes, and William H. Kennoy, Defendants–Appellees.

No. 94–6355.

United States Court of Appeals, Sixth Circuit.

Argued May 7, 1996.

Decided Oct. 15, 1997.

race discrimination under the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964. The district court found, upon remand from this court for trial, that Plaintiff failed to show that Defendants' reason for Plaintiff's nonselection during a remedial reselection process was false or pretextual, and that under its analysis of *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), judgment for Defendants was mandated. We find that the district court misinterpreted relevant Title VII case law by heightening Plaintiff's burden and requiring him to produce direct evidence of discriminatory animus in the reselection procedure. We, therefore, reverse, enter judgment for Plaintiff, and remand this case to the district court for the calculation of damages.

Carol S. Nickle (argued and briefed), Jennifer B. Morton (briefed), Legal Assistant, Carol Nickle & Associates, Knoxville, TN, for Plaintiff–Appellant.

Albert J. Woodall (argued and briefed), Knoxville, TN, for Tennessee Valley Authority.

Thomas F. Fine (briefed), Richard E. Riggs (briefed), Justin M. Schwamm, Sr., Asst. Gen. Counsel, Knoxville, TN, for Defendants–Appellees Marvin T. Runyon and John Waters.

Justin M. Schwamm, Sr., Asst. Gen. Counsel, Knoxville, TN, for Defendants–Appellees Craven Crowell, Johnny H. Hayes and William H. Kennoy.

Before: MARTIN, Chief Judge; JONES, and RYAN, Circuit Judges.

JONES, J., delivered the opinion of the court, in which MARTIN, C. J., joined. RYAN, J. (pp. 352–359), delivered a separate opinion concurring in part and dissenting in part.

## NATHANIEL R. JONES, Circuit Judge.

Plaintiff appeals the bench judgment for Defendants in this action alleging age and

### I.

Plaintiff Charles A. Kline, an African–American male, was hired by the Tennessee Valley Authority ("TVA") in 1964 as a machinist apprentice. He worked as a machinist until May 1977, when he became a personnel officer at TVA's Watts Bar nuclear plant. In 1988, TVA undertook an extensive reorganization, which resulted in the elimination of Kline's position. TVA terminated Kline through a reduction in force in September 1988.

Before his termination, Kline learned of and applied for the position of Personnel Officer at TVA's Kingston Fossil Plant. He contacted Keith Leamon, Human Resource Manager for Power Production, to inquire about applying for the Kingston job. Unbeknownst to Kline, Leamon had already prepared a list of candidates for the position. Leamon advised Kline to present his résumé to Kingston's plant manager, Fred Clayton. Acting on Leamon's advice, Kline hand-delivered his résumé to Clayton.

Upon receipt of Kline's résumé, Clayton told his secretary to take the résumé to Johnnie Brown, the supervisor of the Kingston plant's services department, and ask Brown to "do something with this." Brown placed Kline's résumé in a desk drawer

where it remained for the entire selection process and beyond.

Randy Cole, Clayton's successor as plant manager made the final selection for the personnel position. Cole received the list of candidates from Leamon and interviewed the finalists with Brown's help. Cole's first choice, Pete Johnson, was offered the job on August 15, 1988, but declined the position. The position was then accepted by Carol Beckler, a caucasian female, Cole's second choice. Kline was neither considered nor selected for the personnel officer position.

On October 31, 1988, Kline filed a formal complaint of race, age, and reprisal discrimination with the TVA Equal Opportunity ("EO") Office concerning his nonselection.[1] On December 31, 1990, the TVA's EO Office issued a Final Agency Decision finding that Kline was discriminated against on the basis of age and race when he was not considered for the position. It did not find reprisal discrimination. At the time of the selection Kline was 52 years old. The EO Office ordered TVA to take corrective action by placing Kline in the position with back pay, if, after comparison, he was determined to be better qualified than Beckler, the younger white female who had been selected.

On February 8, 1991, Kline filed this action in the District Court for the Eastern District of Tennessee alleging violations of Title VII and the ADEA. Kline challenged some of the findings of the EO Office, and as an alternative remedy, requested that he be placed in the position immediately and receive back pay. Notwithstanding the pending district court action, on February 25, 1991, after conducting a reselection as required by the EO Office, TVA issued a memorandum stating that it had reselected Carol Beckler for the position at the Kingston Plant.

On January 28, 1992, the district court granted TVA's motion for summary judgment as to the allegations set forth in Kline's original complaint. The district court noted

that the selection official, Mr. Cole, was unaware of Kline's interest in the position and, therefore, could not have discriminated against Kline in his selection of Beckler. The district court found that while the parties involved in disregarding Kline's résumé may have engaged in discriminatory action by so doing, this action could not be attributed to Cole and, therefore, his selection of Beckler was not tainted. The district court found that the remedy provided by TVA's EO Office was adequate. The court stayed dismissal to allow Kline to amend his complaint to challenge the reselection of Beckler.

On May 20, 1992, after Kline amended his complaint to allege discrimination based on age and race[2] in the reselection process, the district court granted TVA's motion for summary judgment as to TVA's reselection of Beckler. It found that Kline had made a *prima facie* case of race and age discrimination, but failed to rebut TVA's legitimate and nondiscriminatory reason for not hiring him. Kline then appealed to this court.

In Kline's first appeal this court found that summary judgment was inappropriate under the circumstances and remanded the case to the district court for trial to determine "whether TVA in fact made a good faith determination that Ms. Beckler was better qualified for the job." *Kline v. TVA*, No. 92–5919, 1993 WL 288280, at *5 (6th Cir. July 29, 1993) (per curiam). This court concluded that the evidence presented to the district court was sufficient to eliminate the presumption of discrimination, but was not sufficient to entitle TVA to judgment as a matter of law. *Id.* at *5. This court determined that based on the record a jury could disbelieve the reasons articulated for choosing Beckler over Kline. *Id.*

This court concluded that the corrective action report choosing Beckler over Kline failed to consider the importance of several factors that distinguished the two candidates at the time of the original selection. These

---

1. During his employment with TVA, Kline had filed numerous discrimination complaints both internally and with the Equal Employment Opportunity Commission ("EEOC"). Kline also complained informally about what he perceived to be discriminatory practices at TVA.

2. It appears that Kline dropped the reprisal claim at this point.

are as follows: Kline was a college graduate while Beckler was not; Kline had eleven years of management experience while Beckler had five years of such experience; the corrective action report is silent about Kline's greater experience as a manager, as well as his hands-on experience as a machinist; and interviews may have given Kline the opportunity to demonstrate experience not documented in the Management Appraisal System ("MAS") reviews, which were used as a mechanism to distinguish the candidates (in the reselection process interviews were not held as it was determined that an interview would favor Ms. Beckler since she had been serving in the position since 1988). *Id.*

On remand, the case was tried before the district court. In addition to the facts established before remand, the district court made several factual findings. First, the district court concluded that the evidence adduced for selecting Beckler clearly supported TVA's reselection decision. Second, it was concluded that TVA's stated reason for selecting Beckler was her greater experience in areas relevant to the Human Resource Officer position and her superior management skills. Third, Kline failed to prove that TVA's reasons were mere pretexts for unlawful discrimination. Fourth, TVA's MAS reviews were proper and objective bases for comparing the relative qualifications of the candidates. Fifth, the failure to interview Kline was in his favor, and he produced no evidence that it was intended to discriminate against him. Sixth, Kline's work as a machinist and possession of a college degree were not relevant criteria in the selection process. Seventh, testimony concerning racist remarks made by Clayton were irrelevant and not credible. Finally, the district court concluded that there was no credible evidence that TVA used or manipulated any of the criteria to justify a discriminatory selection or as a pretext for unlawful discrimination.

The district court framed the issue for trial as "whether age or race was a factor in TVA's 1991 reselection for the Kingston Human Resource Officer position." It found that Kline had made a *prima facie* case of both race and age discrimination. The court

determined that TVA had come forward with proof of a legitimate, non-discriminatory reason for the selection—Beckler was more qualified. The court ruled that the reasons had basis in fact and were sufficient to explain the hiring of Beckler over Kline. The district court concluded that Kline failed to show that the stated reason was not the actual reason nor had he shown that the real reason was discrimination. This appeal followed.

## II.

On appeal, Kline contends that the district court erred in framing the issue for trial. In addition, Kline argues that the evidence produced was sufficient to demonstrate that TVA's stated reason for not selecting Kline in the reselection process was pretextual. Furthermore, Kline contends that the district court misapplied the law in requiring him to prove direct evidence of discrimination.

### A.

▮ The district court's conclusions of law are reviewed *de novo*. *Waxman v. Luna*, 881 F.2d 237, 240 (6th Cir.1989). This court reviews a district court's findings of fact under the clearly erroneous standard of review. *Anderson v. Bessemer City*, 470 U.S. 564, 573–75, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985); Fed.R.Civ.P. 52(a). A finding of fact will only be clearly erroneous when, although there may be some evidence to support the finding, "the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Id.*

▮ Kline argues in his brief that the district court's finding of pretext is a mixed question of law and fact, which should be reviewed by this court using the *de novo* standard of review. We disagree. A determination of pretext is an intermediate factual step in the determination of the ultimate factual finding of intentional discrimination or the lack thereof. It is a finding of fact subject to the clearly erroneous standard of review. In the case at bar, the district court's determination of whether the Plaintiff proved that the reselection process was a pretext will be reviewed for clear error.

## B.

■ We begin by addressing Kline's first argument on appeal that following remand the district court erred in framing the issue for trial. Kline contends that this court framed the ultimate issue as "whether TVA in fact made a good faith determination that Ms. Beckler was better qualified for the job." He further contends that the district court impermissibly "redefined" the issue as whether age or race was a factor in TVA's 1991 reselection for the Kingston HRO position. Kline's position does not accurately reflect the mandate of this court as stated in the first appeal.

This court remanded this case "for further proceedings not inconsistent with this opinion." *Kline*, 1993 WL 288280, at *5. The focus of this court's opinion was on the reselection process. We found that the reason offered by TVA for the reselection of Beckler, that she was better qualified based on objective comparative criteria, was insufficient to support the granting of summary judgment. *Id.* The court concluded that a jury could disbelieve the proffered reasons finding them to be pretextual. *Id.* This court determined that disbelief of TVA's reasons, along with the elements of the *prima facie* case, could warrant a finding of intentional discrimination. *Id.* Accordingly, this court concluded that the issue of whether TVA made a good faith determination that Ms. Beckler was more qualified was a question that could not be disposed of on summary judgment.

This court's decision that summary judgment was improper meant that on remand the district court was to conduct a trial, focusing on whether the process used to choose Beckler over Kline was discriminatory. As a preliminary matter, the district court would have to determine if the process was fair. This determination would include an examination of whether Kline's race or age negatively impacted TVA's decision. The district court's framing of the issue following remand was consistent with this court's instructions. We do not agree with

Kline's assessment that the district court's definition of the issue placed an impossible burden on him.

## C.

We now turn to Kline's second proffered assignment of error. Kline contends that the district court erred in requiring him to prove "pretext plus" in order to prevail on his claim of employment discrimination. He argues that the pretext plus approach to employment discrimination cases, which requires a direct showing of discrimination, in addition to proof of pretext, was rejected by the Supreme Court in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (hereinafter *"Hicks"*). As a preliminary matter, it is necessary to examine the relevant burdens of proof in employment discrimination cases.

### 1.

■ The burdens of proof in employment discrimination cases were first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later clarified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under these cases Title VII cases require three stages of proof.[3] First, the plaintiff must prove a *prima facie* case of discrimination. *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093 (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824 (1973)). If the plaintiff establishes its *prima facie* case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824). If the defendant carries this burden, the plaintiff must prove that the proffered reasons were pretextual. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825). Pretext is established by a direct showing that a discriminatory reason more likely motivated the employer or by an indirect showing that the employer's

---

3. The *McDonnell Douglas* framework has also been applied in cases alleging violations under the ADEA. *See Manzer v. Diamond Shamrock*

*Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994); *Gagne v. Northwestern Nat. Ins. Co.*, 881 F.2d 309, 313 (6th Cir.1989).

explanation is not credible. *Id.* at 256, 101 S.Ct. at 1095.

Prior to the Supreme Court's decision in *Hicks* there was a split among the circuits as to whether plaintiffs were required to make both direct and indirect findings of pretext. Three distinct approaches emerged regarding the proving of pretext. They have been referred to by one commentator as "pretext only," "permissive pretext only," and "pretext plus." *See* Kenneth R. Davis, *The Stumbling Three–Step, Burden–Shifting Approach in Employment Discrimination Cases,* 61 Brooklyn L.Rev. 703, 714–16 (1995). These approaches will be addressed in turn.

"Pretext only" is the least stringent of the three approaches. It simply requires that a plaintiff prove that the defendant's proffered reason is pretextual. Once this is proven, the plaintiff is entitled to judgment as a matter of law. *See Caban–Wheeler v. Elsea,* 904 F.2d 1549, 1554 (11th Cir.1990); *Tye v. Board of Educ.,* 811 F.2d 315, 318 (6th Cir. 1987); *King v. Palmer,* 778 F.2d 878, 881(D.C.Cir.1986); *Thornbrough v. Columbus and Greenville R.R.,* 760 F.2d 633, 646 (5th Cir.1985); *Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d 1393, 1396 (3d Cir. 1984).

The moderate approach to pretext analysis is dubbed the "permissive pretext only" standard. Under this method, if the plaintiff establishes that the defendant's reasons are pretextual the trier of fact is permitted, but not required, to enter judgment for the plaintiff. The technique allows a permissive rather than a mandatory determination favoring the plaintiff. *See Samuels v. Raytheon Corp.,* 934 F.2d 388, 392 (1st Cir.1991); *Visser v. Packer Engineering Assoc., Inc.,* 924 F.2d 655, 657 (7th Cir.1991) (en banc); *Benzies v. Illinois Dep't of Mental Health and Developmental Disabilities,* 810 F.2d 146, 148 (7th Cir.1987).

Under the "pretext plus" strand of analysis, a plaintiff acquires an additional burden. The plaintiff must not only demonstrate that the employer's asserted reasons were pretextual, but the plaintiff also must introduce additional evidence of discrimination. Only with an indirect and direct showing of discrimination is the plaintiff entitled to judgment as a matter of law. The pretext plus approach was the position of a majority of the circuit courts prior to 1993. *See EEOC v. Flasher Co.,* 986 F.2d 1312, 1321 (10th Cir.1992); *Galbraith v. Northern Telecom Inc.,* 944 F.2d 275, 283 (6th Cir.1991); *Lopez v. Metropolitan Life Ins. Co.,* 930 F.2d 157, 161 (2d Cir.1991); *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 9 (1st Cir.1990); *Holder v. City of Raleigh,* 867 F.2d 823, 827 (4th Cir.1989); *Clark v. Huntsville Bd. of Ed.,* 717 F.2d 525, 529 (11th Cir.1983).

This circuit adopted the "pretext plus" approach to employment discrimination analysis. In *Gagne v. Northwestern National Ins. Co.,* 881 F.2d 309, 314 (6th Cir.1989), an age discrimination case, the court noted that the plaintiff was required to produce direct evidence in addition to proof of pretext in order to prevail on his claim. While this court applied the "pretext only" rule in at least one case, this court commonly utilized the "pretext plus" standard prior to 1993. *Compare Tye v. Board of Educ.,* 811 F.2d 315, 319–20 (6th Cir.1987) (holding that the district court erred in determining that plaintiff had not established pretext and concluding that because plaintiff established pretext she was entitled to judgment as a matter of law), *with Gagne,* 881 F.2d at 314 (concluding that finding of pretext does not mandate judgment for plaintiff; plaintiff was required to introduce direct evidence of discrimination in order to prevail), *and Galbraith v. Northern Telecom, Inc.,* 944 F.2d at 283 (same). *See also Manzer v. Diamond Shamrock Chemicals Company,* 29 F.3d 1078, 1082 (6th Cir. 1994) ("The Sixth Circuit sided distinctly with the 'pretext plus' circuits.").

### 2.

The Supreme Court attempted to resolve the confusion among the differing approaches to pretext in *Hicks.* *Hicks* was an appeal from the Eighth Circuit. The Eighth Circuit had applied the "pretext only" standard reasoning that once a plaintiff established that the defendant's reasons were pretextual, he was entitled to judgment as a matter of law. *Hicks,* 509 U.S. at 509, 113 S.Ct. at 2748.

The Supreme Court's decision in *Hicks* effectively rejected both the "pretext only" and "pretext plus" approaches to employment discrimination cases and adopted the "permissive pretext" approach. *See id.* at 511 n. 4, 113 S.Ct. at 2749 n. 4.

The Court held that rejection of the proffered reasons did not require that judgment be entered for the plaintiff. *Id.* at 511, 113 S.Ct. at 2749. The Court noted that a mandatory inference which compels judgment for the plaintiff after disbelief of the employer's alleged non-discriminatory reasons disregards the traditional burdens of proof. *Id.* at 511, 113 S.Ct. at 2749. This is an explicit rejection of the "pretext only" standard.

The Supreme Court also rejected the "pretext plus" approach. The Court noted:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, "[n]o additional proof of discrimination is *required.*"

*Id.* (citation and footnote omitted) (emphasis in original). The Supreme Court determined that upon rejection of the reasons offered by the defendant an inference of discrimination is permitted and no additional proof of discrimination is required. This is a clear rejection of the "pretext plus" requirement.

Subsequently, our sister circuits have interpreted *Hicks* to adopt the "permissive pretext" standard. They have rejected a requirement of additional or direct evidence of discrimination.

In *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994), the Third Circuit articulated the standard to defeat a defendant's motion for summary judgment in employment discrimination cases. The court stated that in order to defeat a summary judgment motion, a plaintiff must either discredit the reasons offered by the defendant to justify the nega-

tive employment action or show that discrimination likely was the motivation behind the adverse employment action. *Id.* The court specifically noted, "if the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case." *Id.* *Fuentes* explicitly rejected the requirement that in order for a plaintiff to prevail following a rejection of the defendant's proffered reasons, a plaintiff must introduce additional evidence of discrimination. *Id.*

In *Sheridan v. E.I. DuPont de Nemours and Company*, 100 F.3d 1061 (3d Cir.1996) (en banc) (hereinafter *"DuPont"*), an en banc decision by the Third Circuit, the court discussed the *Hicks* decision at length. *DuPont* involved a suit brought by Barbara Sheridan, a former DuPont employee, alleging sex discrimination and retaliation. *Id.* at 1063. Following a jury trial, the jury returned a verdict in Sheridan's favor on her constructive discharge claim, but found in favor of DuPont on the remaining claims. *Id.* at 1064. After the verdict, both parties moved for judgment as a matter of law and the district court granted the defendant's motion finding that the evidence failed to establish that gender was a motivating factor in Sheridan's discharge. *Id.*

On appeal, a panel of the Third Circuit reversed the district court's grant of judgment as a matter of law to DuPont on the constructive discharge claim. However, the majority and dissenting opinions differed in their interpretation of *Hicks*. *Id.* at 1065. On rehearing en banc, the Third Circuit examined what it termed "this continuing and perplexing problem of interpreting the shifting burden of *Hicks.*" *Id.*

The *DuPont* decision interpreted *Hicks* as determining that once a plaintiff establishes a *prima facie* case, disbelief of the defendant's proffered reasons creates a situation in which the factfinder is permitted to infer intentional discrimination. Specifically, the court stated:

> [W]e have understood *Hicks* to hold that the elements of the prima facie case and disbelief of the defendant's proffered rea-

sons are the threshold findings, beyond which the jury is permitted, but not required, to draw an inference leading it to conclude that there was intentional discrimination.

*Id.* at 1066–67. The court explicitly rejected the requirement of the introduction of additional evidence following a rejection of the defendant's alleged reasons for the adverse action. *Id.* at 1070. The court stated that an additional evidence requirement would "bring the courts of this circuit back to the confusion and uncertainty created by the 'pretext plus' and 'some evidence' language that prompted this court to consider this case en banc." *Id.* The court concluded that a determination that the reason given by the defendant was pretextual, along with the evidence that established *prima facie* case, will permit a finding of intentional discrimination. *Id.* at 1071.

The D.C. Circuit has also concluded that the *Hicks* decision creates a permissive inference of discrimination following the disbelief of the reasons offered by the defendant. In *Barbour v. Merrill,* 48 F.3d 1270 (D.C.Cir. 1995), *cert. granted in part,* —— U.S. ——, 116 S.Ct. 805, 133 L.Ed.2d 752 (1996), and *cert. dismissed,* —— U.S. ——, 116 S.Ct. 1037, 134 L.Ed.2d 113 (1996), defendants appealed the district court's denial of its motion for judgment as a matter of law following a jury verdict that defendants had unlawfully discriminated against the plaintiff, an African–American male. *Id.* at 1275.

On appeal, defendants argued that "because Barbour 'failed to introduce even a shred of evidence that even remotely suggests that race played a role' in his rejection, the jury could not have reached this conclusion and therefore the district court improperly denied their motion for judgment as a matter of law." *Id.* at 1277. The D.C. Circuit rejected this argument as inconsistent with *Hicks* and noted: "[a]ccording to *Hicks,* a plaintiff need only establish a prima facie case and introduce evidence sufficient to discredit the defendant's proffered nondiscriminatory reasons; at that point, the factfinder, if so persuaded, may infer discrimination." *Id.*

While the Supreme Court's decision in *Hicks* was issued following the district court's proceedings, the circuit court concluded that the district court's jury instruction comported with the reasoning in *Hicks.* *Id.* Moreover, the D.C. Circuit concluded that because the plaintiff had introduced sufficient evidence to allow the district court to infer a *prima facie* case and also to conclude that the defendant's proffered reasons were pretextual, the district court properly denied defendants' motion for judgment as a matter of law. *Id.*

The Seventh Circuit has reached similar conclusions regarding the import of the *Hicks* decision. In *Wallace v. SMC Pneumatics,* 103 F.3d 1394, 1399 (7th Cir.1997), the court interpreted *Hicks* to allow a permissible belief of discrimination following disbelief of the defendant's reasons for the adverse decision. *Id.* ("The defendant's failure to persuade the jury that its proffered reason was its real reason permits (depending of course on the other evidence presented at the trial) an inference that the true reason which it is hiding is discriminatory.").

In *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1123–24 (7th Cir.1994), that court also concluded that once a plaintiff establishes the *prima facie* case and shows that the defendant's reasons are worthy of disbelief, the plaintiff is not automatically entitled to judgment finding intentional discrimination. However, the court noted that while the plaintiff is not entitled to judgment as a matter of law in this situation, the plaintiff can submit their case to the ultimate factfinder on this basis, and the factfinder may enter judgment for the plaintiff. *Id.* While rejecting an entitlement to judgment as a matter of law, the court concluded that at this stage the factfinder can find for the plaintiff without an additional evidence requirement. *Id.* ("The next logical question is whether the plaintiff may prevail, not automatically as a matter of law, but through submission of her case to the ultimate factfinder, under such circumstances. *Hicks* answers this question in the affirmative."). Moreover, the court stated that the plaintiff may want to introduce additional evidence of discrimination in order to strengthen its case,

but by no means is this a requirement to prevail on the merits. *Id.* at 1124.[4]

The decisions of this circuit also indicate that a plaintiff is not required to introduce additional evidence of discrimination to prevail. In *Manzer v. Diamond Shamrock Chemicals Company*, 29 F.3d 1078 (6th Cir. 1994), this court interpreted the *Hicks* decision as rejecting a mandatory inference of discrimination upon the rejection of the defendant's reasons in favor of a permissive inference of discrimination. *Id.* at 1084. The *Manzer* panel distinguished between three types of pretext showings and developed different evidentiary bases for each. The court stated that in order to prove pretext, the plaintiff must show: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the discharge; and 3) the reasons were insufficient to warrant a discharge. *Id.* at 1084 (citing *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir.1993)).

The *Manzer* panel distinguished the first and third showings from the second showing and reasoned that the first and third showings could give an inference of a "suspicion of mendacity" as discussed in the *Hicks* decision.[5] *Id.* at 1084. The court concluded that when the first or third findings of pretext are demonstrated, a court is permitted to infer discrimination from the circumstances. *Id.* Thus, when a plaintiff proves that the defendant's proffered reasons either have no basis in fact or are insufficient to motivate dis-

charge, a permissive inference of discrimination arises.

The *Manzer* panel distinguished the two situations discussed above from the situation when the reasons offered by the defendant did not actually motivate the discharge. *Id.* In this situation, the plaintiff admits "the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal." *Id.* at 1084. The court then reasoned that in this situation, a plaintiff is required to introduce additional evidence of discrimination. *Id.* The *Manzer* panel requires plaintiffs to introduce additional evidence of discrimination when the plaintiff has failed to introduce evidence that the reasons offered by the defendant are "factually false." *Id.* The rule announced in the *Manzer* opinion is limited to the case when the reasons offered by the defendant are not factually challenged. In this situation, a plaintiff must introduce additional evidence of discrimination because the reasons offered by the defendant are not directly challenged and therefore do not bring about an inference of discrimination.

When a plaintiff fails to factually challenge the reasons offered by the defendant, the plaintiff has failed to satisfy one of the allocations of the *McDonnell Douglas–Burdine* burden-shifting mechanisms. When a plaintiff fails to factually challenge the reasons offered by a defendant, the plaintiff has failed to prove pretext and judgment for the

4. Similarly, opinions from other circuits have concluded that the *Hicks* decision creates a permissible inference of discrimination upon the rejection of the defendant's proffered reasons. *See, Isenbergh v. Knight–Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 442 (11th Cir.1996) ("[W]e have no confidence that the *Hicks* decision dictates to circuit and district judges, or even was intended to suggest, that every time the evidentiary record in a case could support a jury's disbelief of the employer's explanation for the pertinent employment action, no court may grant a motion for judgment as a matter of law to the employer.... In our view, *Hicks*, taken as a whole, more likely supports a different conclusion: in such circumstances, the watchword would be not 'every time,' but 'sometimes.'"); *EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir.1994) ("A finding of pretextuality allows a juror to reject a defendant's proffered reasons for a challenged employment action and thus per-

mits the ultimate inference of discrimination."); *Gaworski v. ITT Commercial Finance Corp.*, 17 F.3d 1104, 1109 (8th Cir.1994) ("[I]f (1) the elements of a prima facie case are present, and (2) there exists sufficient evidence for a reasonable jury to reject the defendant's proffered reasons for its actions, then the evidence is sufficient to allow the jury to determine whether intentional discrimination has occurred, and we are without power to reverse the jury's finding." (citation omitted)).

5. Specifically, the *Hicks* decision, states: "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a *suspicion of mendacity*) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Hicks*, 509 U.S. at 511, 113 S.Ct. at 2749(emphasis added).

defendant is warranted because the plaintiff has failed to fulfill the allocation of burdens outlined in *McDonnell Douglas* and *Burdine*. The holding in *Manzer* is limited to situations when the plaintiff fails to challenge the reasons offered by the defendant. Indeed the court so noted: "because we hold that a plaintiff must introduce some evidence of age discrimination other than his prima facie case where there is no evidence which directly challenges the credibility of his employer's proffered explanations, we hold that the district court did not err in granting Diamond Shamrock's motion for a directed verdict...." *Manzer,* 29 F.3d at 1085.

In *Wixson v. Dowagiac Nursing Home,* 87 F.3d 164 (6th Cir.1996), this court affirmed the entry of summary judgment for the defendants in an action alleging unlawful employment practices. The *Wixson* panel acknowledged the permissive pretext standard stated in *Hicks,* holding that "the factfinder's disbelief of the reasons put forward by the defendant ... may, together with the elements of the prima face case, suffice to show intentional discrimination." *Id.* at 170 (quoting *Manzer,* 29 F.3d at 1083).

Nevertheless, this court noted that the plaintiffs failed to demonstrate that the reasons given by the defendants were pretextual. *Id.* at 171. In addition, the court concluded that there was no evidence that the defendants discriminated against the plaintiffs. The court noted that its affirmance of the district court's decision granting summary judgment was not based on the failure of the plaintiff to introduce new evidence of discrimination when attempting to prove pretext. *Id.* The *Wixson* decision specifically rejects the "pretext plus" requirement that a plaintiff must introduce additional evidence following a rejection of the reasons offered by the defendant, and concludes that summary judgment was properly granted because the plaintiffs failed to prove that the reasons given for their discharge were pretextual and that the reason behind the discharge was discrimination.

■ Thus, preceding case-law of this circuit has interpreted the *Hicks* decision as creating a permissive inference of discrimination following a rejection of the reasons offered by the defendant. With the exception of the *Manzer* panel's requirement of additional evidence when a plaintiff has not factually challenged the reasons offered by the defendant, a plaintiff is not required to introduce additional evidence of discrimination. The import of the *Hicks* decision in this circuit is that once a plaintiff has disproved the reasons offered by the defendant, the factfinder is permitted to infer discrimination. A plaintiff does not need to introduce additional evidence of discrimination to prevail on the merits. Once a plaintiff establishes its *prima facie* case, this, along with disbelief of the defendant's proffered reasons for the negative employment action, will permit a finding of discrimination by the factfinder.

## III.

■ We now turn to the merits of Kline's arguments on appeal. In the instant case, Kline contends that the district court heightened his evidentiary burden under *Hicks* and required him to produce direct evidence of pretext. He argues that the district court required him to prove "pretext plus," a concept rejected by the Supreme Court in *Hicks.*

The district court framed the issue at trial as "whether age or race was a factor in TVA's 1991 reselection for the Kingston HRO position." It found that Kline had made out a *prima facie* case of both race and age discrimination. The court then determined that TVA had come forward with proof of a legitimate non-discriminatory reason for the selection—Beckler was more qualified. The court ruled that the reasons had basis in fact and were sufficient to explain the hiring of Beckler over Kline. Finally, the court decreed that Kline failed to show that the stated reason was not the actual reason or that the real reason was discrimination.

In its memorandum opinion, the district court concluded that the Plaintiff's "complete lack of proof as to pretext, coupled with the lack of any *direct proof* of discrimination, are fatal to plaintiff's case." The requirement of the introduction of direct proof, in addition to

a finding of pretext, placed an impermissible burden on the Plaintiff which is contrary to the Supreme Court's decision in *Hicks*, as well as the case law of this circuit.[6] The district court's intimation that in order for Kline to prevail he must introduce evidence of pretext, coupled with direct proof, is an erroneous conclusion of law. The *Hicks* decision effectively eliminated that "pretext-plus" requirement. *See Hicks,* 509 U.S. at 511, 113 S.Ct. at 2749 ("[R]ejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection '[n]o additional proof of discrimination is required.' ") (footnote and citation omitted); *Manzer,* 29 F.3d at 1083 ("The Court, however, *also* rejected the 'pretext plus' position ...." (quoting language in *Hicks* )).

The district court's opinion misstates the current state of the law and the burden shifting mechanism outlined in *Hicks* and its progeny.[7] The district court required Kline to prove "pretext plus", a standard rejected both by the Supreme Court and this circuit. As discussed in detail above, the Supreme Court's decision in *Hicks* rejected the requirement that a plaintiff is required to introduce direct evidence of discrimination in order to prevail as a matter of law.

■ In effect, the district court placed a nearly impossible burden on Kline requiring direct evidence of discrimination. Rarely can discriminatory intent be ascertained through direct evidence because rarely is such evidence available. This is the reason for the *McDonnell Douglas–Burdine* burden of proof mechanism, allowing a plaintiff to prove its case through circumstantial evidence. It is the rare situation when direct evidence of discrimination is readily available, thus victims of employment discrimination are permitted to establish their cases through inferential and circumstantial proof.

*See United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1483, 75 L.Ed.2d 403 (1983) ("[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes"). The reasoning behind the *McDonnell Douglas–Burdine* burden shifting approach is to allow a victim of discrimination to establish their case through inferential and circumstantial proof. As Justice O'Connor has noted, "the entire purpose of the *McDonnell Douglas* prima facie case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 271, 109 S.Ct. 1775, 1802, 104 L.Ed.2d 268 (1989) (O'Connor, J. concurring); *see also Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 622, 83 L.Ed.2d 523 (1985) ("The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the 'plaintiff [has] his day in court despite the unavailability of direct evidence.' "); *DuPont,* 100 F.3d at 1071 ("The distinct method of proof in employment discrimination cases, ... arose out of the Supreme Court's recognition that direct evidence of an employer's motivation will often be unavailable or difficult to acquire.")

■ As such, a plaintiff may establish discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination. *See Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1248 (6th Cir.1995) ("a plaintiff may establish a prima facie case of discrimination either by presenting direct evidence of intentional discrimination by the defendant, or by showing the existence of facts which create an inference of discrimination." (internal citations omitted)). The direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one

---

6. *See* discussion of *Hicks* and cases interpreting the decision decided by this and other circuits, *supra.*

7. The dissent's attempt to recast the legally incorrect basis advanced by the district court in granting summary judgment is unavailing. The dissent disregards the plain language of the district court's opinion and supplants its own rea-

soning in an effort to explain what the district court may have intended by its opinion. The language of the district court, however, cannot be reworded to fit a conclusion that justifies their result. The dissent clearly concedes that the district court misunderstood the legal analysis required by *Hicks.*

or the other, not both. If a plaintiff can produce direct evidence of discrimination then the *McDonnell Douglas–Burdine* paradigm is of no consequence. Similarly, if a plaintiff attempts to prove its case using the *McDonnell Douglas–Burdine* paradigm, then the party is not required to introduce direct evidence of discrimination. The district court required Kline to establish both direct and circumstantial evidence of discrimination when only one type of evidence was required.

In addition, the district court entirely disregarded the evidence introduced by Kline to establish his *prima facie* case. When a plaintiff attempts to establish its case using the *McDonnell Douglas–Burdine* paradigm, the evidence which establishes the *prima facie* case is extremely important. In order to prove a *prima facie* case of discrimination, a plaintiff must show:

1) that he is a member of a protected group, 2) that he was subject to an adverse employment decision, 3) that he was qualified for the position, and 4) that he was replaced by a person outside of the protected class.

*Talley*, 61 F.3d at 1246 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). Intimating that the evidence used to establish the *prima facie* case was irrelevant, the court stated that "[t]here simply was no proof that discrimination was the reason Beckler was selected." This statement ignores the fact that some evidence of discrimination had to be ascertained in order for Kline to prove his *prima facie* case. In fact, the issue of whether Kline established a *prima facie* case has never been in doubt. That Kline established his *prima facie* case has been implicitly and explicitly acknowledged both before this court in the first appeal and by the district court both in the initial proceeding and upon remand from this court.

The evidence that established Kline's *prima facie* case, along with a rejection of the reasons offered by the defendant, would have been sufficient to allow the district court to infer discrimination on the part of TVA. Implicit in Kline's *prima facie* case was a determination of whether he was qualified for the personnel officer position. The district court erroneously determined that inferences drawn from Kline's *prima facie* case are unavailing and of no effect. The inferences drawn from Kline's *prima facie* case *along* with a rejection of the reasons offered by the defendant to explain the adverse employment action, permit a factfinder to find the existence of discrimination.

On remand, the district court failed to evaluate the reasons which this court concluded could have caused a jury to disbelieve the reasons offered by the TVA and, therefore, establish pretext. In our first opinion we examined the reselection process and TVA's reason for choosing Beckler over Kline. *Kline*, 1993 WL 288280 at *4–5. In order to show pretext, Kline only needed to show that TVA's proffered reason, that Beckler was better qualified, was false. *Manzer*, 29 F.3d at 1083. There are ample undisputed facts in the record which support the conclusion that TVA's proffered reasons are pretextual. In order to evaluate those facts it is necessary to reconstruct the reselection process from the beginning.

Sharon Tousek worked with Randy Cole in evaluating the respective qualifications of Kline and Beckler. Tousek reviewed the requirements for the Kingston Human Relations Officer position and reviewed the résumés and personal history records of both candidates. Tousek used the Management Appraisal System ("MAS") reviews as the mechanism to review the candidates experience and management skills. Tousek did not interview each candidate. Based on this information Tousek and Cole determined that Beckler was more qualified for the position.

Based on the record before it and the testimony at trial there was sufficient evidence for the district court to infer a finding of pretext on the part of TVA. There is conflicting testimony concerning the draft job description used in the reselection. At the time of the reselection process Tousek and Cole allegedly obtained a draft job description to conduct the reselection. Tousek testified that she obtained this draft job description from the EO Office investigative record. Likewise, the corrective action report refers to the attached job description. However, Cole stated during the EO Office investigation that the draft job description had been

destroyed around the time of July 1989. Thus, it is curious how the parties who were conducting the reselection process in 1991 could have relied on a draft job description that was allegedly destroyed in July 1989.

The district court notes that selection criteria were taken from the September 1988 job description and were the same as the draft job description used in making the original selection. However, the record contradicts this assertion. In our first opinion we noted that Cole's testimony during the EO Office investigation stated that the draft job description had been destroyed in July 1989. *Kline,* 1993 WL 288280, at *4.

At trial, Tousek testified that the draft job description supplied to Beckler at the time when she took the position as human resources officer only contained six areas whereas the position description used by TVA during the trial contained seven criteria. The issue of the draft job description is at the crux of this case because it makes this court question whether good faith was used in the reselection process. The EO Office found that the draft job description had been destroyed in 1989. Thus, it is inconceivable that TVA could have used the draft job description when implementing the reselection.

At trial, Tousek testified as follows:

Q: Look at the table of contents and tell me if that is Carol Beckler's position description, if it's listed as Carol Beckler's position description?

A: Yes.

Q: Okay. And that position description, if you will look at the last of it, lists six criteria, doesn't it, or six principal accountabilities?

A: Yes.

Q: And the position description that you have been using in court today lists actually seven, doesn't it?

A: Yes.

Q: And the position description that TVA supplied to the TVA EEO does not list that as one of the criteria classification, does it?

A: No, it is not on this description.

Q: So the salary policy and trades and labor classification systems in which you found Ms. Beckler superior was not included in the position description that had been prepared for her and supplied to the TVA Equal Opportunity Office....

A: No. I don't think that it is. I don't disagree that this document is in this record.... I can't explain the discrepancy, but clearly the job requires job classification.

Q: When you secured the job description to prepare your memorandum, you secured that from the investigative record, didn't you?

A: No. If this is what is in the investigative record, the job description that I used is the one that we have been referencing to today that lists the seven accountabilities including job classification.

Q: Do you remember at your deposition.... I asked you a question, I asked, "what did you do after your discussion with Mr. Leamon?" You answered, "I ordered the personal history records on Mr. Kline and selectee, Carol Beckler. I secured the job description that was used for the selection from the investigative record because it was already a matter of record.... Basically I went through the job description outlining the major section criteria and so on" ...

A: I reviewed my testimony. I made a mistake. That is ... five years after the fact. It's very very hard to remember things like that.

. . . .

Q: You don't have any explanation as to why there's a different job description in the investigative record?

A: Unless that is what was an earlier draft and what happened to be available at the time in our working files, as opposed to having been taken directly from the personal history record.

Tousek's testimony is questionable for several reasons. First, as we noted in the first opinion, the EO Office decision states twice

that Cole stated that the draft job description had been destroyed in July 1989. *Kline*, 1993 WL 288280 at \*4. Second, Cole's trial testimony corroborates his statements to the EO Office that the job description was destroyed in 1989. In addition, the job description does not state classification as a criteria, whereas Tousek's memorandum includes this criteria. The missing and conveniently reappearing job description forces this court to question whether TVA's reselection was taken in good faith or whether it was engineered to buttress TVA's initial decision to offer the position to Beckler.

The lack of an interview for Kline is another basis for a finding of pretext and the district court mistakenly discounted this evidence. The district court concluded that interviews of both candidates would have favored Beckler because she had already been in the position for two years. However, the relevant issue is not whether both candidates should have been interviewed during the reselection, but rather whether Kline should have been interviewed at all. Kline was never given the opportunity to demonstrate any qualities which qualified him for the human resource officer position that could not be ascertained from his paper credentials. Beckler was clearly given this opportunity during the initial selection and it appears that Beckler's performance during the interview is what secured the position for her. During Cole's sworn statement he testified: "what I recall from her interview, she appeared to be [sic][sic] a very aggressive and motivated individual, which impressed me. What she seemed to lack in the process and experience appeared to me would be made up in her willingness to pursue learning about that area and developing herself to handle that job." In addition, a Memorandum sent to the EO Investigator from Keith Leamon dated September 29, 1989, states as follows:

Q: Statement of policies relied upon when making the selection for the position per number 1 above. Include documentation of the policies.

A: Standard interview techniques were used in the selecting process. Since there was no time for an extensive review of personal history records, the interview played a more critical role than usual. Interviews are inherently subjective but considered critical in management selections, as it is particularly important to select an individual who has a compatible management style and philosophy.

Beckler's interview during her initial selection allowed her to demonstrate and strengthen her credentials for the position of HRO. Kline should have been given a similar opportunity. Thus, the appropriate inquiry was not whether interviewing the candidates during the reselection process would have given Beckler an unfair advantage, as the district court notes, but whether Kline was entitled to the same degree of consideration that Beckler received. It would have been unnecessary to interview Beckler a second time to determine whether she was qualified for the job, but it would have been helpful to determine whether Kline had qualifications that were not adequately represented in his paper credentials. The district court focused on the wrong criteria in determining that an interview was unnecessary.

Based on Cole's testimony during the EO Office investigation, Beckler was given the job based in large part on her interview. Clearly, Kline should have been given the same opportunity to bolster his paper credentials through an interview. This is especially true since Beckler's interview played a large part in the determination that she was qualified for the position. Thus, TVA's failure to afford Kline similar consideration by interviewing him, a factor which TVA admittedly concedes is highly relevant and important, creates an inference of pretext on the part of TVA.

There was ample evidence in the record from which the district court could have inferred pretext. The record evidence demonstrates that TVA's reselection was not undertaken in good faith. It is questionable whether Beckler was more qualified than Kline or whether the reselection was skewed in her favor. Thus, the district court's conclusion that Kline failed to establish pretext is clearly erroneous.

As the Supreme Court's opinion in *Hicks* indicates, a factfinder is permitted to infer discrimination upon a determination that the reasons given by defendants are pretextual. There was sufficient evidence in the record from which the district court could have inferred pretext. Therefore, the district court's conclusion that "[t]here simply was no proof that discrimination was the reason Beckler was selected," is clearly erroneous. The evidence offered by Kline was legally sufficient to rebut the nondiscriminatory reasons offered by TVA. While the district court's findings of fact concerning pretext are entitled to deference, they must be reversed because they are based on "contradictory and evasive testimony." *Tye v. Board. of Educ.*, 811 F.2d 315, 320 (6th Cir.1987).

In the instant case it is unnecessary to remand this case for findings on the issue of ultimate discrimination because our finding is based on historic facts which are contained in the record. *See id.* (holding that the district court erred in determining that plaintiff had failed to prove pretext and entering judgment for plaintiff).

## IV.

The district court erred in requiring that Kline prove "pretext plus," a standard rejected by the Supreme Court in *Hicks*. In addition, the district court erred in determining that Kline had failed to prove pretext. Based on the foregoing, we **REVERSE** the judgment of the district court, enter **JUDGMENT** for Kline, and **REMAND** for a finding of appropriate relief.

RYAN, Circuit Judge, concurring in part and dissenting in part.

Much of what the majority says I find to be uncontroversial. I agree that the district court's determination as to pretext is a finding of fact subject to review only for clear error, and I agree that the district court correctly defined the issue before it as whether age or race was a factor in TVA's reselection process. I concur, therefore, in parts II(A) and II(B).

I believe, too, that the majority's description of the purport of *Saint Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and its progeny is, in large measure, accurate. Where I part company with the majority, however, is in my understanding of this court's function as a reviewer of factual findings for clear error only. In the name of applying *Saint Mary's*, the majority undertakes a *de novo* review of the district court's factual findings regarding pretext. The majority opinion appears to be driven largely by a desire to reach a different end than that reached by the district court following its two-day bench trial. As a result, the majority grievously mischaracterizes the district court's opinion and then proceeds to reject the district court's wholly plausible and supported findings in favor of a different view. Because I believe the majority opinion represents a fundamental disregard of clear-error review, I dissent.

## I.

### A.

Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire .... any individual ... because of such individual's race...." 42 U.S.C. § 2000e–2(a). Using a nearly identical formula, the Age Discrimination in Employment Act prohibits discrimination because of an individual's age. 29 U.S.C. § 623(a)(1).

The elements of a *prima facie* case are similar in both contexts. Where, as here, the plaintiff alleges that the defendant failed to select him because of his race, he may make out a *prima facie* case by showing 1) that he is a member of a protected class, that is, he is a racial minority; 2) that he was not selected for the position; 3) that he was qualified for the position; and 4) that a person outside the class of protected persons was selected in his stead. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir.1992). To make out a *prima facie* age discrimination claim, the steps are the same, although the person selected need not be outside the protected class, that is, need not be under 40 years of age. *See*

*O'Connor v. Consolidated Coin Caterers Corp.,* —— U.S. ——, ——, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). An alternative method of establishing a *prima facie* case is the presentation of "credible, direct evidence of discriminatory intent." *Mitchell,* 964 F.2d at 582 n. 4. No such evidence was presented here, but it is not disputed that Kline successfully employed the first method to satisfy his *prima facie* burden.

That Title VII and ADEA intentional-discrimination cases employ a so-called "shifting burden of production" is well-established. To summarize briefly,

> [t]he plaintiff in such a case ... must first establish, by a preponderance of the evidence, a "prima facie" case of ... discrimination....
>
> ... "[E]stablishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." ... Thus, the ... presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case—i.e., the burden of "producing evidence" that the adverse employment actions were taken "for a legitimate, nondiscriminatory reason." ...
>
> ... [A]t that point the shifted burden of production became irrelevant: "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted," and "drops from the case[.]". The plaintiff then has "the full and fair opportunity to demonstrate," through presentation of his own case and through cross-examination of the defendant's witnesses, "that the proffered reason was not the true reason for the employment decision," and that [a discriminatory reason] was. He retains that "ultimate burden of persuading the [trier of fact] that [he] has been the victim of intentional discrimination."

*St. Mary's Honor Ctr.,* 509 U.S. at 506–08, 113 S.Ct. at 2746–48 (footnote and citations omitted). Of course, if a plaintiff can present direct evidence of discrimination, it is not necessary for a court to employ the burden-shifting approach. *See Burns v. City of Columbus,* 91 F.3d 836, 842–43 (6th Cir.1996);

*Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1178 (6th Cir.1996).

In any event, since there is no dispute about the existence of Kline's *prima facie* case, nor about the TVA's introduction of evidence that its actions were not caused by unlawful discrimination, it is only the final step of the burden-shifting framework, that of proving "pretext," that is at issue here. As the majority rightly observes, the case central to the necessary analysis is the Supreme Court's 1993 decision in *Saint Mary's Honor Center.* At issue there was whether "the trier of fact's rejection of the employer's asserted reasons for its actions *mandates* a finding for the plaintiff." 509 U.S. at 504, 113 S.Ct. at 2746. In *Saint Mary's,* the district court, following a bench trial, had "found that the reasons [the employer] gave were not the real reasons for [the employee's] demotion and discharge," but "nonetheless held that [the employee] had failed to carry his ultimate burden of proving that his race was the determining factor in [the employer's] decision first to demote and then to dismiss him." *Id.* at 508. The court of appeals reversed, believing that once an employer's proffered reasons are discredited, the employer is effectively in the position of having remained silent, and thus of not having rebutted the plaintiff's *prima facie* case.

The Supreme Court, however, held that "[t]hat is not so. By producing evidence (whether ultimately persuasive or not) of nondiscriminatory reasons, [the employers] sustained their burden of production, and thus placed themselves in a 'better position than if they had remained silent.'" *Id.* at 509, 113 S.Ct. at 2748. And once the defendant meets its burden of production, the presumption of discrimination created by the *prima facie* case simply ceases to exist—irrespective of whether the defendant's case is actually persuasive. *See id.*

But as the Court cautioned,

> [t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered rea-

sons, will permit the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, "[n]o additional proof of discrimination is required."

*Id.* at 511, 113 S.Ct. at 2749 (citations and footnote omitted). At the same time, disbelief of the defendant's reasons does not *require* a factfinder to conclude that the plaintiff has shown intentional discrimination. *See id.* Thus, disbelief of a defendant's reasons, if accompanied by a conviction that the true reason underlying the pretextual reason is *not* discrimination, should not result in a finding of intentional discrimination by a factfinder. The court noted that "a reason cannot be proved to be 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Id.* at 515, 113 S.Ct. at 2752.

## B.

The majority here claims that the district court "require[d] ... the introduction of direct proof in addition to a finding of pretext," and that this "placed an impermissible burden on the Plaintiff which is contrary to the Supreme Court's decision in *Hicks,* as well as the case law of this circuit." (Maj. op. at 347.) It asserts that the lower court "intimat[ed] that in order for Kline to prevail he must introduce evidence of pretext, coupled with direct proof...." (*Id.*) Accordingly, the majority concludes, "[t]he district court's opinion misstates the current state of the law and the burden shifting mechanism outlined in *Hicks* and its progeny. The district court required Kline to prove 'pretext plus' a standard [sic] rejected both by the Supreme Court and this circuit." (Maj. op. at 348.) Contrary to the majority's representation, however, the district court below did not misapply *Saint Mary's.*

Following its detailed findings of fact, the district court proceeded to make its conclusions of law, first quoting *Saint Mary's Honor Center* to the effect that " 'rejection of the defendant's proffered reasons ... will *permit* the trier of fact to infer the ultimate fact of intentional discrimination.' " It concluded,

however, that it would *not* reject TVA's reasons, because Kline "clearly failed to show that TVA's legitimate, non-discriminatory reason for his nonselection as part of the 1991 reselection process was false." It further concluded that "[t]here simply was no proof that discrimination was the reason Beckler was selected." The court correctly noted that pretext could be shown either by demonstrating that the stated reasons for the employment decision had no basis in fact, or that they were not the actual reasons, or that they were insufficient to explain the employment decision, but concluded that Kline "did not meet his burden under any of these three methods":

> TVA's stated reasons for selecting Beckler are, as discussed in the findings of fact, clearly supported by the record. Moreover, defendants' stated reason that Beckler not only had more experience in relevant areas than plaintiff, but also had better management skills, is fully sufficient to explain her selection over him. Finally, plaintiff failed to show that the stated reasons were not the actual reasons.

It was then, after repeatedly stating that Kline had failed to demonstrate that the TVA's reasons were pretextual, that the court concluded as follows: "This complete lack of proof as to pretext, coupled with the lack of any direct proof of discrimination, are fatal to plaintiff's case." The majority relies on this statement for its claim that the district court required Kline to prove pretext *and* to introduce direct evidence of discrimination. The claim defies reality. It is clear, when read in context, that the district court meant that Kline could *either* have proved pretext *or* presented direct proof of discrimination as an alternative—but the fact that he proved *neither* meant that he had not proved his case. In other words, given the district court's conclusion that there was no pretext, Kline could only prevail by offering direct proof of discrimination, and thus circumventing the burden-shifting framework. It is simply false to suggest that the district court erroneously required the dual task of demonstrating pretext *and* direct evidence of discrimination. Rather than requiring Kline to

produce direct evidence of discrimination, the district court simply noted that he had not done so.

It is true, however, that the district court added a problematic footnote:

> Although plaintiff could, perhaps, prevail under the analysis set forth by the *dissent* in *Saint Mary's,* that is not the law of the land. The dissent in *Saint Mary's* focused, like the appellate panel did in remanding this case, on the majority's statement about the factfinder's disbelief of reasons accompanied by a suspicion of mendacity, which, for the uninitiated, means deceptive or false. *It is my opinion that the clear import of the Saint Mary's case is that a Title VII (or ADEA) plaintiff must ultimately show that the stated reason for the employment decision was false, and that discrimination was the real reason.*

(Emphasis added.) Although less than perfectly clear—arguably, the court meant only that if the "pretext only" position advocated by the *Saint Mary's* dissent had been the law, then the plaintiff's argument would at least have had legal, if not factual, support— it certainly appears that this footnote misunderstands the import of *Saint Mary's.* But even assuming that the district was indeed expressing its erroneous belief that *Saint Mary's* had placed an imprimatur on the "pretext plus" school of thought, the misunderstanding does not merit reversal. Indeed, any such misunderstanding is of no moment, in light of the court's clear finding that there *was* no pretext; if that finding is not clearly erroneous, then it does not matter if the district court wrongly believed pretext alone would not be enough to justify a verdict. Thus, as the TVA points out, since the district court found that there was no evidence of pretext, it was unnecessary, if not impossible, for the court then to proceed to a determination whether the proof of pretext was sufficient to prove intentional discrimination.

In short, the district court concluded that the TVA had articulated a legitimate, nondiscriminatory explanation for its selection of Beckler, and that Kline failed to rebut that explanation. Those two findings, if not clearly erroneous, effectively end the case.

## II.

### A.

Using its condemnation of the district court's legal reasoning as a springboard, the majority proceeds to "evaluate the reasons which ... could have caused a jury to disbelieve the reasons offered by the TVA and therefore establish pretext." (Maj. op. at 349.) Following its evaluation, the majority concludes that it "is not convinced that TVA's reselection was undertaken in good faith.... Thus, the district court's conclusion that Kline failed to establish pretext is clearly erroneous." (Maj. op. at 351.) With all due respect, the majority asks the wrong question: it does not matter if the *majority* is convinced. Instead, the pertinent question is whether the *district court* was convinced, and if so, whether it was clearly erroneous. The fact that the majority would reach a different conclusion than the district court does not mean that the district court was clearly erroneous. The majority's flawed perspective leads it, wrongly, to conduct a *de novo* review of the factual findings that led the district court to conclude that Kline had failed to show pretext.

It is beyond question, however, that when this court reviews a record of a bench trial in the district court, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed.R.Civ.P. 52(a). While the majority opinion acknowledges that clear error is the applicable standard, its execution of the review demonstrates that the acknowledgment is hollow.

I find it instructive to consider the Supreme Court's authoritative exegesis on clear-error review, found in *Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). As the Court explained, there are abundant reasons underlying our deference to the district courts:

> The rationale for deference to the original finder of fact is not limited to the

superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much. As the Court has stated in a different context, the trial on the merits should be "the 'main event' ... rather than a 'tryout on the road.'" For these reasons, review of factual findings under the clearly-erroneous standard—with its deference to the trier of fact—is the rule, not the exception.

*Id.* at 574–75, 105 S.Ct. at 1512 (citation omitted). The Court then went to some trouble to explain, at length, a reviewing court's function and role:

Although the meaning of the phrase "clearly erroneous" is not immediately apparent, certain general principles governing the exercise of the appellate court's power to overturn findings of a district court may be derived from our cases. The foremost of these principles ... is that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. *The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court. ... If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.*

*Id.* at 573–74, 105 S.Ct. at 1511 (emphasis added) (citations omitted). And when a finding is based on a credibility determination, as the *Anderson* Court made clear, it is due a special deference:

When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.... [W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.

*Id.* at 575, 105 S.Ct. at 1512.

### B.

As the district court recognized, the standard for assessing whether an employer's explanation for an adverse employment action is pretextual was established by this court in *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078 (6th Cir.1994). The court clarified the three ways in which a plaintiff can produce sufficient evidence to allow a factfinder to reject the employer's explanation:

To make a submissible case on the credibility of his employer's explanation, the plaintiff is "required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the adverse employment action], or (3) that they were insufficient to motivate [the adverse employment action.]" The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are

"factually false." The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity." ... [S]uch a showing permits, but does not require, the factfinder to infer illegal discrimination from the plaintiff's prima facie case.

*Id.* at 1084 (citations omitted); *see EEOC v. Yenkin–Majestic Paint Corp.,* 112 F.3d 831, 834 (6th Cir.1997). Kline attempted to introduce evidence showing the first type of pretext: that the reasons given by the TVA for its reselection of Beckler had no basis in fact. The district court, however, made lengthy and detailed findings of fact leading it to conclude that Kline's evidence was insufficient to make this showing.

The majority, however, states that "[t]here are ample undisputed facts in the record which support the conclusion that TVA's proffered reasons are pretextual." (Maj. op. at 349.) As should be clear from the Supreme Court's description, this statement is not even close to a finding of clear error. It is, instead, simply a recognition that evidence can often support more than one version of reality, and an impermissible choice between two supported realities. It is true that there arguably was evidence that the TVA's reselection of Carol Beckler was pretextual—but it is equally true that there was evidence that the reselection was not pretextual. The district court concluded the latter was the case, and that conclusion should be left undisturbed by this court.

In any event, the majority fails to call the conclusion into serious question. It focuses on two narrow components of the evidence— the job description and the failure to interview—ignoring huge portions of the district court's carefully reasoned and thorough opinion. Moreover, it is plain that there was

ample evidence to support the district court's findings with regard to those two items. Its findings, therefore, easily withstand clear-error review.

**1.**

I will consider first, the job description. A large part of Kline's argument on appeal is directed at having this court infer that the TVA acted in bad faith because of some confusion about the job description applicable to Beckler's position at the time Beckler was hired. In accepting this argument, the majority states that there is "conflicting testimony concerning the draft job description used in the reselection." (Maj. op. at 349.) The acknowledgment of a conflict alone should forestall any further inquiry, for a finding based on a choice of one of "two permissible views of the evidence ... cannot be clearly erroneous." *Anderson,* 470 U.S. at 574, 105 S.Ct. at 1511. But instead, the majority reasons that the conflicting evidence is the "crux" of the case "because it makes this court question whether good faith was used in the reselection process." (Maj. op. at 350.)

The district court concluded that Sharon Tousek, the individual charged with reconstructing the selection process, derived the selection criteria for the position from a September 1988 job description, which was the job description issued to Tousek when she began her job, and which was "essentially the same as the draft job description used by [Randy] Cole in making the original selection." The job description, the court found, had "[s]ix functional areas": "recruitment and employment, salary policy and trades and labor classification systems, salary policy and trades and labor salary administration, labor relations, affirmative employment/equal employment opportunity, and training [of personnel]."

Kline's two complaints are that the functional criteria were not derived from the September 1988 job description, and that the September job description was not essentially the same as the one actually used. In particular, he asserts that the job description actually used did not contain a criterion for "salary policy and trades and labor classifica-

tion systems," a category in which Beckler was more qualified, and the inclusion of which accordingly favored Beckler. According to Kline, the draft job description was improperly destroyed by Cole, and then replaced with a fake draft job description that included the labor category.

Of the three job descriptions in the record, however—one from June 1988, one from September 1988, and the undated job description that Kline claims was actually used—two (June and September) list the "labor classification" criterion. Since descriptions from both before and after the time of the actual August selection list this criterion, Kline's convoluted conspiracy theory is facially implausible. Furthermore, irrespective of when the labor category got into the job description, there is no question that at the time of the initial selection, Cole was very concerned that the appointee have extensive labor experience; he testified accordingly, and Kline offered nothing to challenge this testimony. In other words, there is no question that Tousek was correct to consider the candidates' labor experience. Thus, the majority's *Sturm und Drang* about which job description was used and whether it contained the labor category is, at bottom, of no moment.

In any event, the district court explicitly rejected this theory when it found that "there was absolutely no credible evidence that TVA used or manipulated any of these criteria in an effort to justify a discriminatory selection." The majority employs the completely inconsequential confusion over which job description was used as a smokescreen, and simply never confronts the fact that there is absolutely no justifiable basis for throwing out this factual finding premised on credibility determinations. This amounts to a fundamental disregard of this court's role as a reviewer for clear error only.

### 2.

The majority next turns its focus to the TVA's failure to interview Kline or Beckler as part of the reselection process, stating that "[t]he lack of an interview for Kline also questions [sic] the good faith of the reselection process." (Maj. op. at 351.) The dis-

trict court rejected, however, Kline's argument that "the absence of an interview [is] proof of a discriminatory animus," noting that the initial TVA finding of discrimination that had led to the reselection process, had "*mandated* that Beckler's 'experience in the position cannot be considered' in the reselection," and that an interview would have resulted in just that. "Beckler's experience in the job ... would very likely have given her an advantage if an interview of the candidates had been included in the reselection process." The district court finally noted that Kline "failed to adduce any proof that Tousek avoided using interviews with the intent to discriminate against him or to deny him an opportunity to fully describe his experience."

The majority disregards these findings, on the basis of an argument never even put forward by Kline. According to the majority, although Beckler should not have been interviewed because her experience would have given her an advantage, Kline nonetheless should have been:

Beckler's interview during her initial selection allowed her to demonstrate and strengthen her credentials for the position of HRO. Kline should have been given a similar opportunity. Thus, the appropriate inquiry was not whether interviewing the candidates during the reselection process would have given Beckler an unfair advantage, as the district court notes, but whether Kline was entitled to the same degree of consideration that Beckler received. It would have been unnecessary to interview Beckler a second time to determine whether she was qualified for the job, but it would have been helpful to determine whether Kline had qualifications that were not adequately represented in his paper credentials.

(Maj. op. at 351.)

This reasoning defies logic: Beckler's successful interview performance during the initial phase would simply not be a piece of information that Tousek would have been privy to in conducting the reselection. Therefore, if Kline were interviewed during the reselection and Beckler were not, then Kline would have an unfair advantage over

Beckler, assuming his interview was a success. The purpose of the reselection process in part was to reproduce the original selection to the extent possible; it was not meant to give the plaintiff every possible benefit. The only way to level the playing field for Kline and Beckler would be, as the district court found, to conduct no interview of either candidate, rather than to interview Kline only.

But even if it would have been possible to conduct a fair interview of Kline, that does *not* mean that the TVA's failure to do so indicates pretext. As the district court emphasized, "there was no proof that interviews had ever been conducted with a reselection process at TVA"; interviews are not even required as part of an initial selection process. There is, moreover, no indication in the record that Kline ever requested an interview, nor does he ever specify what information an interview would have revealed that was not contained elsewhere in the voluminous material considered by the TVA. All of these facts strongly suggest the reasonableness of the TVA's decision not to interview the candidates. And most significantly, the district court explicitly found that the failure to conduct interviews was based solely on the desire to be fair to Kline, rather than on discriminatory animus. The majority fails to confront this finding, and its *post hoc* invention of a potential interview process simply does nothing to lead one to the conclusion that the finding was clearly erroneous.

### III.

I make one final observation. Although the majority repeatedly acknowledges that *Saint Mary's* instructs that "[t]he evidence that established Kline's *prima facie* case, along with a rejection of the reasons offered by the defendant, would have been *sufficient* to allow the district court to infer discrimination on the part of TVA," (maj. op. at 350) (emphasis added), it nonetheless reasons as if the rule of *Saint Mary's* were that these facts *mandate* an inference of discrimination. Even if the district court were clearly erroneous in finding that pretext had not been shown, that does not mean that judgment should be entered for Kline. A finding of

pretext, coupled with the *prima facie* showing, is only the bare minimum necessary to support a judgment for the plaintiff. Given, however, that the district court made independent findings that Kline was not the victim of any discrimination—which findings the majority nowhere challenges—it is completely inappropriate to enter judgment for Kline.

As the majority itself acknowledges, the point of the Title VII undertaking is to determine whether discrimination was at work; we do not sit as TVA's supermanager, simply to ensure that its hiring decisions are scrupulously fair in every particular. Kline is not entitled to the best possible management decision by the TVA; he is entitled only to one free of improper motive. *See Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 266 (6th Cir.1986). The district court's finding that Kline presented no evidence of discrimination is not clearly erroneous and therefore Kline is not entitled to judgment in his favor.