ALLEN SCOTT SMITH,                    )
                                      )
    Plaintiff/Appellant,              )        Appeal No.
                                      )        01-A-01-9803-CV-00146
v.                                    )
                                      )        Rutherford Circuit
                                      )        No. 35343
BRIDGESTONE/FIRESTONE,                )
INC.,                                 )
                                      )
    Defendant/Appellee.               )
                                      )

FILED

February 23, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE CIRCUIT COURT FOR RUTHERFORD COUNTY

AT MURFREESBORO, TENNESSEE


THE HONORABLE ROBERT E. CORLEW, JUDGE



MARY A. PARKER
STEPHEN C. CROFFORD
DOUGLAS B. JANNEY, III
209 10th Avenue South, Suite 511
Nashville, Tennessee  37203
    ATTORNEYS FOR PLAINTIFF/APPELLANT


ROBERT E. BOSTON
STEPHEN W. GRACE
Waller, Lansden, Dortch & Davis
511 Union Street, Suite 2100
Nashville City Center
Nashville, Tennessee  37219
    ATTORNEYS FOR DEFENDANT/APPELLEE




AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED



WILLIAM B. CAIN, JUDGE

# OPINION

Plaintiff, Allen Scott Smith, filed suit against his former employer Bridgestone/Firestone, Inc. for retaliatory discharge for the prior filing of a worker's compensation complaint. Plaintiff sought " . . . actual damages including back pay, reinstatement, front pay if plaintiff is not reinstated, damages for embarrassment and humiliation, and punitive damages."[1]

On April 24, 1997, following discovery plaintiff filed an amended complaint with a second count charging failure of the defendant to notify the State of Tennessee of worker's compensation injury in violation of Tennessee Code Annotated section 50-6-114(a). Damages sought were essentially the same as in the original complaint.

Plaintiff was employed by defendant from February 1988 until October 7, 1994 at its Laverne, Tennessee plant. He suffered a work-related injury on September 12, 1994 but was required to continue work on a restricted work status.

On October 1, 1994, the security guard at the entrance to the Bridgestone plant grounds reported that Mr. Smith had left the plant grounds in a vehicle. Plaintiff's supervisor began a search for Mr. Smith in the plant. Mr. Smith was located on the plant grounds some four hours after the security guard's initial report; Smith asserted that he had never left the plant grounds. At a meeting on October 4, 1994 between management personnel, union representatives and Mr. Smith; defendant's labor relations manager Mr. Davenport decided to discharge plaintiff for leaving plant premises and filing an inaccurate work time card.

On October 7, 1994, plaintiff filed a grievance under the Union Management Collective Bargaining Agreement whereunder "union protest unjust discharge of Scott Smith. Request he be reinstated his record clear and be made

---

[1] Complaint at ¶ 16, T.R. p. 3.

whole for all loss of earnings benefits etc."[sic][2]  The defendant rejected the grievance.

On March 25, 1996, following a meeting between the plaintiff, union representatives and Mr. Davenport and another management employee, Mr. Smith was reinstated with all seniority restored, vacation pay restored and all insurance and fringe benefits restored.  Back pay was denied and both plaintiff and the union agreed to this settlement of Smith's contract grievance.

The trial judge granted summary judgment to the defendant on all issues holding:

> As the Court understands the law, when such an issue is raised, it is first the duty of the Plaintiff to show to the Court the proof, prima facie, that discrimination has occurred which is unlawful, or that the violation has occurred.  It appears to the Court for purposes of the Motion for Summary Judgment, that the Plaintiff has satisfied this burden.  When the burden is so satisfied, the burden then shifts to the Defendant to advance a non-discriminatory basis for the actions which occurred, in this case the termination of the Plaintiff.  Again, it appears to the Court that the Defendant has satisfied this burden.  The burden then again shifts to the Plaintiff to rebut the defense presented by the defendant, and it appears to the Court that it is in this particular that the Plaintiff has been unable to come forward with further proof, prima facie, so that the case should go forward.
>
> * * *
>
> Having so decided, it may be unnecessary that the Court further consider the issue as to whether the action by the Plaintiff is now barred by what perhaps might amount to an accord and satisfaction.  The evidence has been presented, and perhaps is not in controversy, showing that after the Plaintiff's termination, the matter was presented to an arbitration through a procedure developed between the union of which the Plaintiff is a member and the management of the Defendant.  It has been shown that the results of the arbitration, whether by agreement or by enforceable order, were that the Plaintiff was in fact reinstated without back pay, but with some back benefits.  The Plaintiff accepted the decision, as did the Defendant.  Having so accepted the decision, it appears to the Court additionally that further

---

[2]    Grievance Report No. 5568, T.R. p. 59.

action by the Plaintiff is now barred.[3]

The oft repeated standard for considering summary judgment applicable in both trial and appellate courts provides:

> [2, 3]   In determining whether or not a genuine issue of material fact exists for purposes of summary judgment, courts in this state have indicated that the question should be considered in the same manner as a motion for directed verdict made at the close of the plaintiff's proof, i.e., the trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Downen v. Allstate Ins. Co.,* 811 S.W.2d 523, 524 (Tenn.1991); *Poore,* 666 S.W.2d at 49; *Dunn,* 833 S.W.2d at 80; *Wyatt v. Winnebago Industries, Inc.,* 566 S.W.2d 276, 279 (Tenn. App. 1977); *Taylor,* 573 S.W.2d at 480.  Then, if there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied. *Poore,* 666 S.W.2d at 49 ("[I]f the mind of the court entertains any doubt whether or not a genuine issue exists as to any material fact it is its duty to overrule the motion."); *Dooley v. Everett,* 805 S.W.2d 380, 383 (Tenn.App.1990).  The court is not to "weigh" the evidence when evaluating a motion for summary judgment.

*Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn.1993).

Little has changed since the adoption of the Tennessee Rules of Civil Procedure and Justice Harbison's early observations remain valid to this day:

> [7, 8]   In concluding this opinion we feel it proper to comment upon the procedure which was followed in the trial of this case.  Summary judgment proceedings in this state were authorized for the first time by Rule 56 of the Tennessee Rules of Civil Procedure.  This new procedure was designed to fill a vacancy or void which had existed in prior practice and to provide a procedural step which had heretofore not existed.  Under previous practice, in both the circuit and chancery courts, there had been no satisfactory intermediate step between the demurrer, which dealt only with the contents of pleadings, and a full-scale trial of a case upon the merits.  The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which

---

[3]   Trial Court Memorandum, Supp. T.R. p. 3; p. 4.

there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, <u>or where there is uncertainty as to whether there may be such a dispute</u>, the duty of the trial court is clear. He is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

*Evco Corporation v. Ross*, 528 S.W.2d 20, 24-25 (Tenn.1975) (emphasis added).

There seems to be little dispute between the parties as to the applicable law relative to retaliatory discharge claims. Tennessee follows *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden rests first upon plaintiff to establish a prima facie case of retaliatory discharge. *Eddins v. Geneva Pharmacy, Inc.*, 877 F.Supp. 413, 423 (E.D.Tenn.1993). After such a showing the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision. *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn.App.1993).

At this point the burden shifts back to the plaintiff to prove that the proffered reasons offered by the defendant are pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973).

In sustaining defendant's motion for summary judgment the trial court held that plaintiff Smith had carried his burden of proof to establish a prima facie case of discrimination. The court then held that the defendant had articulated a legitimate, nondiscriminatory reason for the employee's rejection as a matter of law and granted summary judgment to the defendant. The question for our determination is whether or not the plaintiff has presented evidence sufficient to go to the jury on the "pretext" question.

Prior to the United States Supreme Court's decision in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the avenues for proving "pretext" were varied. Until that time, the high court's controlling decisions in *McDonnell Douglas*, supra, and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207

(1981), left lower courts, federal and state, to their own devices in determining what was necessary to prove pretext.

Three distinct approaches emerged.  These have been referred to as:

1.  "Pretext Only"

2.  "Permissive Pretext Only" and

3.  "Pretext Plus"

***Kline v. Tennessee Valley Authority***, 128 F.3d 337, 343 (6th Cir. 1997).

Of these approaches, the sixth circuit had adopted "pretext plus" whereby the plaintiff must not only demonstrate that the employer's asserted reasons are pretextual but must introduce additional evidence of discrimination. ***Gagne v. Northwestern National Insurance Co.***, 881 F.2d 309, 314 (6th Cir.1989).  In assessing the effect of ***Hicks*** on the various paths, the court in ***Kline*** found:

> The Supreme Court attempted to resolve the confusion among the differing approaches to pretext in *Hicks*.  *Hicks* was an appeal from the Eighth Circuit.  The Eighth Circuit had applied the "pretext only" standard reasoning that once a plaintiff established that the defendant's reasons were pretextual, he was entitled to judgment as a matter of law.  *Hicks*, 509 U.S. at 509, 113 S.Ct. at 2748.  The Supreme Court's decision in *Hicks* effectively rejected both the "pretext only" and "pretext plus" approaches to employment discrimination cases and adopted the "permissive pretext" approach.  *See id.* at 511 n. 4, 113 S.Ct. at 2749 n. 4.
>
> The Court held that rejection of the proffered reasons did not require that judgment be entered for the plaintiff. *Id.* at 511, 113 S.Ct. at 2749.  The Court noted that a mandatory inference which compels judgment for the plaintiff after disbelief of the employer's alleged non-discriminatory reasons disregards the traditional burdens of proof.  *Id.* at 511, 113 S.Ct. at 2749.  This is an explicit rejection of the "pretext only" standard.
>
> The Supreme Court also rejected the "pretext plus" approach.  The Court noted:
>
>> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.  Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of

> intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, "[n]o additional proof of discrimination is *required*."

*Id.* (citation and footnote omitted) (emphasis in original). The Supreme Court determined that upon rejection of the reasons offered by the defendant an inference of discrimination is permitted and no additional proof of discrimination is required. This is a clear rejection of the "pretext plus" requirement.

> Subsequently, our sister circuits have interpreted *Hicks* to adopt the "permissive pretext" standard. They have rejected a requirement of additional or direct evidence of discrimination.

***Kline v. Tennessee Valley Authority***, 128 F.3d 337, 343-344 (6th Cir. 1997).

In the case at bar, as with most cases of its kind, much has been made of the McDonnell Douglas burden-shift construct. This confusing discussion of shifting burdens clouds the nature of the burden being shifted. In truth, the court in ***Kline*** might have been better served by a deeper lesson from the language of ***Hicks***. This language makes clear the fact that Plaintiff's prima facie case shifts only the burden of production. Says the court:

> In the nature of things, the determination that a defendant has met its burden of *production* (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility-assessment stage. At the close of the defendant's case, the court is asked to decide whether an issue of fact remains for the trier of fact to determine.

***St. Mary's Honor Center v. Hicks***, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphasis added).

A turn of the page brings the reader of ***Hicks*** to a discussion of what happens (as in the case at bar) when the defendant meets this burden of production:

> If, on the other hand, the defendant has succeeded in carrying its burden of production, the ***McDonnell Douglas*** framework-- with its presumptions and burdens-- is no longer relevant. To resurrect it later, after the trier of fact has determined that what was "produced" to meet the burden is not credible, flies in the face of our holding in ***Burdine*** that to rebut the presumption "the defendant need not persuade the court that it was actually motivated by the proffered

reasons." 450 U.S. at 254, 67 L.Ed.2d 207, 101 S.Ct. 1089. The presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture. Id., at 255, 67 L.Ed.2d 207, 101 S.Ct. 1089. The defendant's "production" (whatever its persuasive effect) having been made, the trier of fact proceeds to decide the ultimate question: whether the plaintiff has proved "that the defendant intentionally discriminated against [him]" because of his race id., at 253, 67 L.Ed.2d 207, 101 S.Ct. 1089.

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The above discussion continues directly to the quotation used in *Kline*, supra. Following an extensive history of pre- and post-*Hicks* decisions, the Sixth Circuit in *Kline* held:

> The import of the *Hicks* decision in this circuit is that once a plaintiff has disproved the reasons offered by the defendant, the factfinder is permitted to infer discrimination. A plaintiff does not need to introduce additional evidence of discrimination to prevail on the merits. Once a plaintiff establishes its *prima facie* case, this, along with disbelief of the defendant's proffered reasons for the negative employment action, will permit a finding of discrimination by the factfinder.

128 F.3d 337, 347 (6th Cir. 1997).

Thus in the case at bar we must analyze the proof under this "permissive pretext" standard.

The separate body of law in Tennessee as to employment discrimination and retaliatory discharge began tracking federal procedural law after the United States Supreme Court established the "shifting burdens" analysis in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The trail led us through *Johnson v. St. Francis Hospital, Inc.*, 759 S.W.2d 925 (Tenn.App.1988); *Anderson v. Standard Register Co.*, 857 S.W.2d 555 (Tenn.1993); *St. Claire v. Litho Color Services, Inc.*, Appeal No. 02A01-9110-CV-00235, 1992 WL 120225 (Tenn.App. June 5, 1992) and *Newsom v. Textron Aerostructures*, 924

S.W.2d 87 (Tenn.App.1995). The degree to which this expanding body of federal law has now subsumed state law is bluntly recognized by this court in *Maurice DeVore v. Deloitte Touche*, Appeal No. 01A01-9602-CH 00073, 1998 WL 68985 (Tenn.App.Feb. 28, 1998).

In rejecting the discrimination claims asserted by Mr. DeVore this court held:

> The burden of proving the ultimate issue of discrimination is at all times on the employee in a discrimination case. See *Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093-94, 67 L. Ed.2d 207 (1981); Brenner v. Textron Aerostructures, 874 S.W.2d 579, 583 (Tenn.Ct.App.1993).* The employee may establish a prima facie case of discrimination either by using the traditional criteria set forth in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed. 2d 668 (1973),* or by producing direct, circumstantial, or statistical evidence of discrimination. See *Loeffler v. Kjellgren, 884 S.W.2d 463, 469 (Tenn.Ct.App.1994); Brenner v. Textron Aerostructures, 874 S.W.2d at 583; Bruce v. Western Auto Supply Co., 669 S.W.2d 95, 97 (Tenn.Ct.App. 1984).*
>
> Once the employee makes out a prima facie case of discrimination, the burden shifts to the employer to rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for the employment action. See *Loeffler v. Kjellgren, 884 S.W.2d at 470; Brenner v. Textron Aerostructures, 874 S.W.2d at 583; Silpacharin v. Metropolitan Gov't, 797 S.W.2d 625, 629 (Tenn.Ct.App. 1990).* When the employer has presented a legitimate, non-discriminatory reason for the employment action, the burden shifts back to the employee to prove that the employer's explanation is pretextual or not worthy of belief. See *Texas Dep't of Community Affairs v. Burdine, 450 U.S. at 253, 101 S. Ct. at 1093; Brenner v. Textron Aerostructures, 874 S.W.2d at 583, 587; Silpacharin v. Metropolitan Gov't, 797 S.W.2d at 629.*

*DeVore v. Deloitte & Touche,* Appeal No. 01A01-9602-CH-00073, 1998 WL 8985, * 4 (Tenn.Ct.App. Feb. 28, 1998).

The *DeVore* court goes on to hold that the retaliatory discharge claim " . . . founders on essentially the same shoals that undermined Mr. DeVore's discrimination claims."

The elements for both a federal retaliatory discharge claim and a state retaliatory discharge claim are essentially the same. In order to make out a prima facie case, an employee must prove (1) that he or she opposed the employer's unlawful employment practice, (2) that the employer subsequently subjected the employee to an adverse employment action, and (3) that a causal link exists between the employee's action and the employer's subsequent adverse employment action. See *Yates v. Avco Corp., 819 F.2d 630, 638 (6th Cir. 1987); Newsom v. Textron Aerostructures, 924 S.W.2d 87, 96 (Tenn. Ct.App.1995).* An employee may establish the needed causal connection simply by proving that his or her protected activity was a substantial factor leading to the discharge. See *Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990); Polk v. Yellow Freight Sys., Inc., 876 F.2d 527, 531 (6th Cir. 1989).*

Deloitte & Touche presented competent evidence that Mr. DeVore was discharged, not in retaliation for his discrimination charge, but because of his inadequate job performance. In order to avoid summary dismissal of his retaliation claim, Mr. DeVore was required to come forward with some competent evidence that Deloitte & Touche's explanation was merely pretextual. They [sic] only evidence that Mr. DeVore offered was the fact that Deloitte & Touche discharged him two months after he filed his discrimination charge with the EEC. This bare sequential evidence does not suffice to make out either a federal or state retaliation claim. See *Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1314 (6th Cir. 1989); Thomason v. Better-Bilt Aluminum Prods., Inc., 831 S.W.2d 291, 293 (Tenn.Ct.App. 1992).*

*DeVore v. Deloitte & Touche*, Appeal No. 01A01-9602-CH-00073, 1998 WL 68985, * 11 (Tenn.Ct.App. Feb. 28, 1998).

Contrasting Mr. Devore's proof with Mr. Smith's, it is difficult to conceive how Mr. DeVore's purely subjective beliefs about discrimination unsupported by competent evidence could survive summary judgment on both discrimination and retaliatory discharge claims, even under the "permissive pretext" rule. His proof simply provides no basis by which a reasonable trier of fact could find the employer's explanation to be pretextual or not worthy of belief.

Construing the evidence most strongly in favor of the plaintiff we find

the record at bar shows:

1.    Defendant had a written work policy that work-related injuries resulting in restrictions were matters for which an employee could be reprimanded, disciplined, and subject to termination depending upon the number of work-related injuries (defined in the policy as an "offense").

2.    No previous employee of Bridgestone during the tenure of Mr. Davenport had been discharged as a result of leaving the plant premises.

3.    Before making a decision to terminate Mr. Smith on October 4, 1994, Mr. Davenport had before him unsworn statements from numerous co-workers attesting to the fact that Mr. Smith had never left the Bridgestone premises on October 1, 1994.

4.    Mr. Smith had never been in violation of plant policy before this event and had not been disciplined for insubordinate conduct or activity.

5.    The gatekeeper on October 1, 1994 had not, in fact, actually seen Mr. Smith leave the Bridgestone premises.

6.    Mr. Davenport could not explain how Mr. Smith could have left the premises through its guarded security gate and then come back to the premises without being observed at the gate. He speculated that Mr. Smith may have "jumped the fence" to get back into the plant.

At the summary judgment stage and under the "permissive pretext" standard, the proof by Mr. Smith was sufficient to "permit" (not "mandate") the trier of fact to find pretext. Additional evidence under the discarded "pretext plus" standard is not necessary and the trial court erred in granting summary judgment to the defendant on the retaliatory discharge claim.

The trial court did not address plaintiff's alleged cause of action asserted in his amended complaint about the failure of the defendant to report to the State of Tennessee the work-related injury previously suffered by Mr. Smith. It is clear, however, that no independent action for damages will lie for this failure to report. ***Perry v. Transamerica Insurance Group***, 703 S.W.2d 151 (Tenn.App.1985).

Whether or not such violation would be a "device" under Tennessee

Code Annotated section 50-6-114 and be thus admissible in evidence in a retaliatory discharge case is not a question presented to the court in this appeal.

Plaintiff last asserts that the trial court erred in granting summary judgment to the defendant on the question of "accord and satisfaction."

We disagree. On October 7, 1994 plaintiff filed his grievance under the collective bargaining agreement whereby he and his union protested " . . . unjust discharge of Scott Smith." Relief requested in the grievance was that he be reinstated to his job, his record cleared and " . . . he made whole for all loss of earnings, benefits, etc." This is the same relief he seeks under the complaint of retaliatory discharge. Defendant rejected his grievance and he remained on terminated status until March 25, 1996 when he, together with three representatives of the union, met with Jim Davenport and Missy Cortez for the defendant. The minutes of this meeting are revealing.

Subject:  Allen Scott Smith - Reinstatement

Davenport:    Scott, I talked with you briefly on the phone last week regarding this. The Union and the company sat down the past several weeks to talk about settling termination grievances. Yours is one of those grievances. The Union asked if there was anyway [sic] to solve it prior to arbitration. In arbitration, you win some, you loose some. We felt like we had a good case, and we felt just in our discharge, however an arbitrator may have felt different. Last Friday in a meeting with John Johnson, we offered reinstatement, with no back pay but with full seniority, vacation etc. If the union accepts, it becomes a dead issue. It will simply be recorded as a suspension. It

will be just like you never left. One thing we are trying to figure is your vacation pay for 1995. If it is going to count as a suspension, you are due your vacation. I believe it is based on 2% of last years [sic] earnings.

Smith: Why not the last full year?

Davenport: We could look at it.

Smith: Could it be based on the last full year?

Davenport: Maybe it can. I will ask Ollie to look at it. There are a couple of things you need to do. You need to re-enroll in your insurance so we can get it in the mainframe and the paperwork to Akron. Jo Ann is the new Benefits Clerk. You need to get a new ID and sticker on your car.

Smith: Jackie gave me one already.

Davenport: You were in department 115 when you left. I am planning on putting you back in that department. I don't know what Wesley will do. Probably have to excess someone out of that department, but we can do that. There is no C crew anymore, only B & D crews. You just need to notify us and let us know when to expect you back to work.

Smith: The 1st of April will be fine. I would like to work B crew.

Davenport: Let me get the schedule and see if B crew is in (JD leaves to get schedule). B Crew will be in on the 3rd of April.

Smith: Then I will come in on the 3rd

|  |  |
|---|---|
|  | of April. |
| Manning: | He has restrictions (Manning hands him restrictions). |
| Davenport: | Is this from the injury you had when you left? |
| Smith: | Yes. |
| Davenport: | Do you have permanent restrictions? |
| Smith: | Those are permanent. |
| Davenport: | We will have to move you out of 115 with these restrictions. |
| Smith: | I can still do the reprocessor. |
| Davenport: | You think you can do it. |
| Smith: | Yes. There is no overhead work. |
| Davenport: | I will give this to medical and have them do permanent restrictions for the book. |
| Manning: | So these are mostly concerning overhead work? |
| Smith: | Yes, mostly overhead. Back there we don't do stuff like that. |
| Davenport: | What is you clock card number? |
| Smith: | 1025. |
| Davenport: | Anything else you need to ask? |
| Smith: | As far as unemployment. Who is going to pay them. They said I had to pay them back once I got my job back. |
| Capps: | You did not receive back pay. |
| Davenport: | You should not have to pay them back since you did not receive back pay, however, if |

you do have to pay them back it will be your responsibility, not the company's.

Gillespie: Jimmy, on his vacation pay, he is getting paid for 1995, but what about 1996? Would it pick up at the new year?

Davenport: Yes. He would schedule right in line with his seniority. Right now we need to get to the issue of resolving last years vacation pay.

Smith: How soon could I get it?

Davenport: Hopefully by next Thursday, as long as the payroll department can get the right information in time and have it done.

Be sure to get with Jo Ann and make sure you get your paperwork for your benefits filled out so we can process them. I will let Wesley know you will be in on April 3rd, B Crew. I will get Ollie started on the vacation pay and have medical take care of the restrictions (JD leaves the room to make copies of restrictions).

Manning: You will not have to pay back the unemployment since you didn't get back pay.

Smith: That is Ok. I am not loosing much.

(JD comes back in).

Meeting adjourned.[4]

---

[4]

Minutes included in T. R. as part of Attachment IX to Jimmy Davenport's deposition.

In *Anderson v. Frank*, 755 F.Supp. 187, 189 (E.D.Mich.1991) the court addressed the same issue:

> Defendant argues that the executed settlement agreement bars plaintiff's subsequent action in this Court for alleged sex and reprisal discrimination. Defendant maintains that even though the settlement check compensated plaintiff for only six out of the eight weeks during which she was unemployed, the settlement agreement, nonetheless, bars any subsequent Title VII claim for additional wages and/or compensation. Defendant relies on *Strozier v. General Motors Corp.*, 635 F.2d 424 (5th Cir. 1981) in support of its proposition. The Court agrees.
>
> *Strozier* provides guidance with respect to the outcome of this matter. In *Strozier*, the court held that a voluntary settlement of a grievance claim bars any further proceedings in the district court on the same claim if the request for relief in both the grievance procedure and district court proceeding are identical.
>
> The Court is persuaded by the principles articulated in *Strozier*, a case that is factually similar to the instant case. In the instant case, as in *Strozier*, the plaintiff voluntarily accepted the benefits of the settlement agreement by returning to work and cashing the settlement check, and requested identical relief in her grievance and in her district court complaint. Therefore, pursuant to *Strozier*, plaintiff is barred from pursuing any further action on her sex and reprisal claims in this Court.

*Anderson v. Frank*, 755 F.Supp. 187, 189 (E.D.Mich.1991).

The case at bar bears no resemblance to *Gray v. Toshiba*, M.D.Tenn. Case No. 3:94-0712. *Gray* involved arbitration and a failed arbitration procedure because of procedural flaws. This case involves a voluntary settlement of a grievance entered into between the employee and his union on the one hand and the employer on the other hand, without regard to arbitration either compulsory or voluntary. *Strozier v. General Motors Corp.*, 635 F.2d 424 (5th Cir. 1981) explained the differences between arbitration and voluntary settlement.

> Settlement of a dispute is inherently different from resolution through arbitration. A settlement is a compromise voluntarily agreed to by the parties. Each party generally accepts something less than that to which he believes he is entitled based on a decision that the compromise is more advantageous to him than the sum of the risks and benefits involved in pursuing the claim. Arbitration, on the other

hand, is an "adjudication" of conflicting interests by a neutral third party. In binding arbitration, neither party is free to accept or reject the ruling of the arbitrator. Once the dispute has been submitted to arbitration, the parties must abide by the arbitral decision. In light of these differences, different approaches are required in determining whether resolution of a claim through settlement or through arbitration bars a subsequent suit under Title VII and section 1981. Strozier's 1973 claims were settled and the 1976 discharge was arbitrated, so each must be treated separately.

*Strozier v. General Motors Corp.*, 635 F.2d 424, 425 (5th Cir. 1981).

Plaintiff Smith is in the exact position as was Mr. Strozier. He is not "mitigating his damages" by voluntarily joining in a full settlement of all his grievances.

[2]    Although a *Gardner-Denver* footnote discusses voluntary settlements, 415 U.S. at 52 n.15, 94 S.Ct. at 1021 n.15, the settlement issue in this case is suggested by our decision in *United States v. Allegheny-Ludlum Industries, Inc.,* 517 F.2d 826 (5th Cir.1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). Although Title VII and section 1981 claims were expressly mentioned in the consent decree controlling the release in that case, the opinion did not rest on that formalism. There this Court stated that nothing in *Gardner-Denver* supports the assertion "that an aggrieved employee who freely settles his or her unliquidated demand with the employer or the union may reciprocate by suing the same defendant at a later date on the same cause of action, merely because the employee grows dissatisfied with the payment for which he or she settled." *Id.* at 858. That proposition is equally applicable to this case and we hold plaintiff's agreement to and acceptance of the settlement forecloses the present lawsuit with respect to the 1973 disciplinary actions, even though statutory claims were not expressly covered. The remedy sought and settled was the precise remedy sought in this lawsuit. Although he pled for a class action injunction, the only individual relief plaintiff sought in the complaint was reinstatement and back pay. The denial of class action certification was not appealed. He settled both aspects of the requested individual relief. Under *Allegheny-Ludlum,* Strozier cannot now request additional monetary relief merely because he is dissatisfied with the amount he voluntarily agreed to accept in the settlement as compensation for his claims.

*Strozier v. General Motors Corp.*, 635 F.2d 424, 426 (5th Cir. 1981).

This result is demanded not so much by any dramatic, new body of law " . . . but rather by the established principle that one who agrees to settle his claim cannot subsequently seek both the benefit of the settlement and the opportunity to continue to press the claim he agreed to settle." *Kirby v. Dole*, 736 F.2d 661, 664 (11th Cir. 1984); *see also U.S. v. Allegheny-Ludlum Industries*, 517 F.2d 826, 858-859.

The voluntary settlement of the grievance between the parties has preclusive effect and the trial court correctly sustained the motion for summary judgment.

The action of the trial court in granting summary judgment on the retaliatory discharge claim is reversed.

The action of the trial court in granting summary judgment on the preclusive effect of the grievance settlement agreement is affirmed.

Costs of this cause are assessed against appellant.

_____
WILLIAM B. CAIN, JUDGE


CONCUR:


_____
BEN H. CANTRELL, PRES. JUDGE, M.S.


_____
PATRICIA J. COTTRELL, JUDGE