IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 4, 2003 Session

## WELLESLEY BUILDERS, LLC v. VILLAGE OF CHERRY GLEN ASSOCIATION, INC.

Appeal from the Chancery Court for Davidson County
No. 01-16-01     Claudia Bonnyman, Special Chancellor

No. M2002-03102-COA-R3-CV - Filed February 26, 2004

The Homeowners' Association of a residential subdivision organized as a planned unit development assessed maintenance fees against the owner of twenty-two unimproved lots in the subdivision. The owner of those lots filed a suit to obtain a declaration that it was not liable for those fees, alleging that the developer had waived all assessments on vacant lots. The trial court found that the Association was entitled to rescind the waiver, granted summary judgment to the Association, and ordered the lot owners to pay the fees, as well as significant late charges and attorney fees, for a total of over $45,000. We reverse the judgment because there is no evidence in the record that the Board of Directors of the Homeowners' Association ever officially rescinded the waiver, and there is thus a material question of fact as to whether its assessments were valid.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and ALAN E. GLENN, SP. J., joined.

Keith C. Dennen; Natalya Rose, Nashville, Tennessee, for the appellants, Wellesley Builders, L.L.C., S.H. Property, LLC.

Barbara J. Perutelli, Gary S. Rubenstein, Nashville, Tennessee; Gerald C. Wigger, Nashville, Tennessee, for the appellee, Village of Cherry Glen Association, Inc.

### OPINION

This appeal involves the validity of a homeowners' association's assessment of maintenance fees against a builder who owned some unimproved lots and who had previously been granted a waiver of such fees by the original developer.

# I. Assessment and Waiver

The Village of Cherry Glen is a planned unit development within a larger planned community in Nashville known as Burton Hills. The developer of Cherry Glen executed a "Declaration of Covenants, Conditions and Restrictions," which explicitly states that it is to run with the land. The Restrictive Covenant was recorded in the Register's Office of Davidson County on December 7, 1995. It restricts the use of individual lots to private single family homes, and regulates (among other things) landscaping, garages, clotheslines, drainage, trash disposal, utilities and the use of common areas.

Article III of the Covenant recites the establishment of a maintenance association called the Village of Cherry Glen Association, Inc., ("Cherry Glen" or "The Association") which is the defendant in this lawsuit. The Association was incorporated as a nonprofit corporation sometime in 1995. *See* Tenn. Code Ann. § 48-51-101 *et seq*. Article IV of the Covenant declares that the developer and every lot owner is a member of the Association, subject to annual assessments or charges for maintenance and special assessments for capital improvements. The assessments are declared to be a continuing lien upon the property against which each assessment is made.

The Covenant limits the maximum annual assessment to $200 per month per lot. It also empowers the Board of Directors to levy late charges for non-payment of assessments, and to collect reasonable attorney fees if necessary for the collection of delinquent assessments. One Section also declares, "The Board of Directors may at its discretion waive the assessment for any year or part of a year for any lot not occupied as a residence." The Association's bylaws contain provisions identical to those in the Covenant in regard to assessments, including the provision as to their waiver.

George N. Spiva was the agent for the developer of Cherry Glen. He also served as the first President of the Village of Cherry Glen Association and as a member of its Board of Directors. Under the Covenant, all lot owners with the exception of the developer were entitled to one vote on the Board for each lot owned. The developer was entitled to ten votes for each of its lots.

On April 1, 1997, John Hays asked George Spiva about purchasing unimproved lots in the subdivision for the construction of homes on those lots. Mr. Hays was the sole owner and chief manager of plaintiff Wellesley Builders and secretary and 50% owner of plaintiff SH Properties (which we will refer to collectively as "the builder"). Mr. Spiva informed Mr. Hays that the Association's Board of Directors had decided that no assessments would be charged on such lots until a home was completed and sold. Wellesley purchased twenty-two unimproved lots over the following twenty-eight months. The plaintiffs contend that they would not have purchased the lots without the promised waiver, and the defendant admits this contention for the purposes of summary judgment.

No assessment was charged on any unimproved lots during 1997, 1998 or the first quarter of 1999. By the end of that quarter, the developer no longer owned any lots in the subdivision. On March 31, 1999, Mr. Spiva ceased serving on Cherry Glen's Board of Directors and turned over

control of the Board to the Association's homeowners. He also sent a letter to lot buyers notifying them of this fact, and alerting them that he understood that the new Board might try to collect assessment fees from the time the lots were purchased.

As reflected in its minutes, the new Board discussed the question of fees several times, and decided to consult with an attorney as to its options. It also hired a new managing agent, Jean Walker & Associates. On July 20, 1999, and again on September 1, September 24, December 17, and December 26, Jean Walker & Associates notified Wellesley Builders by mail that it was obligated to pay $100 per month for each of its lots, retroactive to April 1, 1999, as well as a $25 per month late charge for each lot. Wellesley did not respond to these letters.[1] When the plaintiffs sold eight of their lots, however, Cherry Glen demanded the applicable unpaid assessments on those lots, and the closing agent delivered the money.

## II. Court Proceedings

On January 3, 2001, Wellesley Builders and SH Properties filed the instant Complaint in the Chancery Court of Davidson County. They asked the court for a Declaratory Judgment that they were not liable for payment of annual or special assessments, late charges, attorney fees or any other costs on their unimproved lots. They also asked the court to declare the late charges to be unreasonable and usurious, and for a judgment of $6,102, as "amounts erroneously paid to the defendant." Additionally, they asserted a claim against the defendant for fraudulent misrepresentation, insisting they were induced to purchase the lots in dispute by the promise of a waiver of assessments.

Cherry Glen answered on October 24, 2001, and counterclaimed for unpaid assessments and late fees. It also filed a Third-Party Complaint against John Hays, asking for payment of the assessment and late fees on a single lot that he had purchased individually. The Association contended that the waiver of assessments was invalid because it violated the Statute of Frauds. On July 16, 2002 the defendant filed a Motion for Summary Judgment, supported by its Statement of Undisputed Facts. *See* Tenn. R. Civ. P. 56.03.

The Plaintiffs subsequently filed a Response to the Statement of Undisputed Facts, followed by their own Statement of Additional Undisputed Facts. The additional facts included the following assertion: "Prior to April, 1997, the Defendant's Board of Directors elected to waive all association fees with respect to any unimproved lot until completion of a house on that lot." The defendant responded with a partial admission: "It is admitted that the fees were waived by the developer but denied that the waiver was binding upon subsequent Boards or in perpetuity to the Association."

---

[1] The record contains a letter from Wellesley Builders to Jean Walker & Associates, dated December 18, 2000. The letter was introduced by the attorney for the Association during the deposition of Mr. Hayes. It states, "[p]lease forward to me immediately the entire balance owed by Wellesley Builders, L.L.C. to Cherry Glen Homeowners' Association with a breakdown of how much is allotted to each lot. We will mail payment upon receipt of this information from you." The letter is signed Lydia Gillespie. John Hayes testified that he had not previously seen this letter. He identified Ms. Gillespie as his former bookkeeper, but denied that she had the authority to speak on behalf of Wellesley Builders.

The trial court considered the materials submitted by the parties, and decided that the defendant was entitled to Summary Judgment for assessments since April 1999. In her Memorandum and Order, the chancellor reasoned that the Association was entitled to rescind the waiver of fees granted by the prior president and that the plaintiffs were obligated to pay those fees once they were notified of the rescission.

The Chancellor also ruled that the late charges and attorney fees were valid and ordered another hearing to determine the amounts to be paid. Following that hearing, the trial court assessed a judgment against the plaintiffs/counter-defendants Wellesley Builders for $25,870, plus attorney fees of $17,129, against SH Builders for $1,300, and against John Hays for $1,625. This appeal followed.

### III. The Disputed Assessments

The builder took the position that it was entitled to continue its exemption from assessments so long as there was not an occupied residence on its properties, while the Association initially contended that the waiver was invalid *ab initio*, and that it was legally entitled to collect assessments on each of the builder's lots from the first date of purchase. The issues were more narrowly defined for purposes of summary judgment, which involved only the validity of the assessments and late fees imposed after April 1, 1999.

The Chancellor took note of the fact that the power to waive assessments set out in the Declaration of Covenants was a limited power ("The Board of Directors may at its discretion waive the assessment for any year or part of a year for any lot not occupied as a residence"). She also observed that since the Declaration was registered, it gave the plaintiffs notice that assessments were designed to spread the costs of running the development among all the owners, and that fellow-owners had purchased their lots based in part upon its content. The court accordingly concluded that "the new Board had the power and duty to administer assessments after April of 1999."

We agree with the trial court that after April 1, 1999, the Board had the power to rescind the waiver and to assess fees against the builder. However, the court did not address one of the arguments raised by the builder in its response to the Motion for Summary Judgment and in this appeal as well: that the Association's Board never took any official action to rescind the waiver, to authorize the property manager to submit a bill to the developer, or to adopt a $25 per month late fee.

### A. The Tennessee Non-Profit Corporation Act

The powers that a corporation may exercise are the result of a grant from the State. Those powers are usually set out in the corporation's charter and its bylaws, and in the laws of the state under which it is organized. The exercise of those powers may likewise only be performed in accordance with its charter, its bylaws, and the applicable statutes. 19 C.J.S. *Corporations* § 554-556. In the present case, proper action by its Board of Directors is the only means by which the Cherry Glen Association may exercise the authority which the Association possesses.

-4-

The Tennessee Non-Profit Corporation Act, Tenn. Code Ann. § 48–51-101 et seq., regulates the operation of nonprofit corporations in this state. Under the Act, each such corporation must have a Board of Directors, Tenn. Code Ann. § 48-58-101(a). With some limited exceptions not applicable here, "all corporate powers shall be exercised by or under the authority of, and the affairs of the corporation managed under the direction of, its board." Tenn. Code Ann. § 48-58-101(b).

Tenn. Code Ann. § 48-58-205(a) defines a quorum of the board of directors as "a majority of the directors in office immediately before a meeting begins." If a quorum is present when a vote is taken, the affirmative vote of a majority of directors present constitutes the act of the board. Tenn. Code Ann. § 48-58-205(b). Although a board may act without a meeting, this can only be done "[i]f all directors consent to taking such action without a meeting..." Under such circumstances, "[t]he action must be evidenced by one (1) or more written consents describing the action taken, signed by each director, and included in the minutes filed with the corporate records reflecting the action taken." Tenn. Code Ann. § 48-58-202(a).

The corporation is further charged with the duty of keeping ". . . minutes of all meetings of its members and board of directors, a record of all actions taken by its members or directors without a meeting, and a record of all actions taken by committees of the board of directors . . ." Tenn. Code Ann. § 48-66-101(a). It appears to us that in order to rescind the waiver and to impose assessments on the builders, the Board of Directors would have had to vote to do so in accordance with the provisions of the Non-Profit Corporation Act and of its own bylaws. The best evidence of such action would be the minutes of the Board.

## B. The Minutes of the Cherry Glen Association

We note that the record in this case contains the minutes of the Board of Directors' meeting of April 19, 1999, and of many subsequent meetings. The April 19 minutes recite under "Old Business" that the Board voted to retain the services of Jean Walker & Associates as property manager. The minutes also make the bare assertion that the developer had no right under the covenant to relieve the builders from fees, without indicating that there was any discussion, debate, or vote on this proposition. But the assertion is followed with the statement that "[w]e have voted to pursue a legal opinion before we proceed, however," and that "Jean Walker will send out a formal notice to the builders when we are ready."

There are no minutes in the record of any meetings between April 19, 1999 and July 20, 1999, the date Ms. Walker sent out the first notice of assessments to the plaintiff. The next meeting of the Board for which there are minutes in the record was conducted on September 16, 1999. The last item in those minutes states that "[t]he board will meet again on Tuesday, September 21 at 7:00 p.m. at the home of Al Dietrich to discuss with our attorney any issues concerning fees due the association from Class A owners that happen to be builders..."

The affidavit of Jean Walker states that at the request of the Association's attorneys, she made a diligent search for Minutes of the Association, and produced all the minutes in her

possession. She notes that "[t]he Minutes of September 21, 1999 could not be located." She further states that "I am aware that the Board revoked the waiver of assessments as I was directed by the Board to collect assessments from homebuilders shortly after Jean Walker & Associates was retained as managing agent for the Association."

Ms. Walker does not claim that she was present at any meeting where the board voted to rescind the waiver of assessments or to begin billing the builder, and there is no affidavit in the record of any board member testifying that any such a meeting ever took place. Thus, aside from Ms. Walker's affidavit, there is nothing in the record to indicate that the Board ever acted to revoke the waiver, to bill the plaintiff for assessments, or to determine the manner of assessing late fees or the amount of such fees.

The Association argues that the notices sent out by Ms. Walker clearly show that the board intended to assess the builder with the monthly fee beginning on April 1, 1999. It further claims that the minutes which would have proven a resolution authorizing such action must have become lost. However, it never produced any evidence to that effect. The builder argues to the contrary that it is most likely that the President of the Board or some other Board member simply instructed Ms. Walker to send out the assessments without ever squarely presenting the question to the other directors.

### C. Summary Judgment

It appears to us that the conflicting allegations about the actions of the Board of Directors have raised a question of material fact as to whether the Board formally acted to authorize the Association's agent to impose assessments on the builder. A party is entitled to summary judgment only if no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.03. *Byrd v. Hall*, 847 S.W.2d 208, 214 (1993).

The Association has cited one case for the proposition that the absence of corporate minutes does not necessarily mean that the corporation acted without authority, *University of Tennessee v. Memphis Hospital College Building Co.*, 6 Tenn. App. 131 (1927). While this may be correct, the cited case also says, "[t]he absence of authority on the minutes does not disprove authority, it is merely negative and proves nothing." 6 Tenn. App. at 147.

In ruling on a summary judgment motion, a trial court is not called upon to weigh the evidence. *Smith v. Bridgestone/Firestone, Inc.,* 2 S.W.3d 197, 200 (Tenn. Ct. App. 1999); *Mike v. Po Group, Inc.,* 937 S.W.2d 790, 792 (Tenn. 1996); *Byrd v. Hall,* 847 S.W.2d 208, 211 (Tenn. 1993). Thus, the absence of minutes cannot be considered dispositive, on either side, of the question of whether the Board actually revoked the waiver and authorized the assessments.

The trial court must rather "take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn.1997); *Byrd v. Hall,* 847

S.W.2d 208, 210-211 (Tenn. 1993); *Keene v. Cracker Barrel Old Country Store*, 853 S.W.2d 501, 503 (Tenn. Ct. App. 1992); *Wyatt v. Winnebago Industries*, 566 S.W.2d 276, 279 (Tenn. Ct. App. 1977). Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Staples v. CBL & Associates, Inc.,* 15 S.W.3d 83, 89 (Tenn. 2000); *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995). Reviewing courts must make a fresh determination as to whether the requirements for summary judgment have been met and apply the same standards. *Cherry v. Williams,* 36 S.W.3d 78, 82 (Tenn. Ct. App. 2000); *Shadrick v. Coker*, 963 S.W.2d 726, 731 (Tenn.1998); *Roberts v. Roberts,* 845 S.W.3d 225, 226 (Tenn. Ct. App. 1992).

Viewing the evidence under this standard, we cannot agree with the trial court that the Association is entitled to summary judgment on its counterclaim. We accordingly vacate the judgment against the plaintiffs,[2] and remand this case to the trial court for further proceedings.

## IV. THE QUESTION OF LATE FEES

The builder argues on appeal that the late fees the Association imposed on its unpaid assessments violate the Tennessee laws against usury, Tenn. Code Ann. § 47-14-101 et seq. The Association argues to the contrary that it does not, because usury is defined as the collection of interest in excess of the amounts permitted by statute, Tenn. Code Ann. § 437-14-102(11), and that late fees should not be considered interest. The trial court agreed with the Association and ruled that since the late fees did not constitute interest, they could be collected.

Since we have determined that the Association was not entitled to summary judgment on its counter-claim for assessments, the validity of the late fees for non-payment of those assessments is not ripe for our review. We therefore do not find it necessary to rule on the matter.

## V. CONCLUSION

The judgment of the trial court is reversed. We remand this case to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellee, the Village of Cherry Glen Association, Inc.

_____
PATRICIA J. COTTRELL, JUDGE

---

[2]We have found a document in the record titled "Notice of Partial Satisfaction of Judgment" which recites that the trial court's judgment against S.H. Properties, L.L.C. and John Hays has been satisfied, but that the judgment against Wellesley Builder, L.L.C. has not. The record was filed on March 3, 2003. The document in question is stamped as having been received on March 25, 2003, but not as having been filed. It is signed by the attorney for the Association, but he has not filed a Motion to asking the court to consider post-judgment facts under Rule 14 Tenn. R. App. P.